Arthur M. SCHWARTZ, Marnette Ritter and Marnie's Crewel Studio on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CELESTIAL SEASONINGS, INC., Painewebber, Inc., Shearson/Lehman Brothers, Inc., Mo Siegel, Ronald V. Davis, Philip B. Livingston, Vestar/Celestial Investment Limited Partnership, John D. Howard, James P. Kelley, Arthur J. Nagle, Daniel S. O'Connell, Robert L. Rosner, and Barnet M. Feinblum, Defendants.

Civ.A. No. 95–K–1045.

United States District Court,
D. Colorado.

March 31, 1998.

Gerald L. Bader, Jr., Randolph S. Dement, Bader, Villaneuva & Feder, P.C., Denver, CO, Dennis J. Johnson, Law Offices of Dennis Johnson, South Burlington, VT, for Plaintiffs.

John S. Phillips, Fred H. Bartlit, Jr., Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, Jeffrey Rudman, Peter J. Mac-Donald, S. Tara Miller, Hale & Dorr, Boston, MA, for Celestial Seasonings, Siegel, Davis, Livingston, Vestar/Celestial Inv. Ltd. Partnership, Howard, Kelley, Nagle, O'Connell, Rosner & Feinblum.

George B. Curtis, Thomas Marshall Piccone, Gibson, Dunn & Crutcher, Denver, CO, for PaineWebber, Inc., and Lehman Brothers, Inc.

## MEMORANDUM OPINION AND ORDER ON PENDING MOTIONS

KANE, Jr., Senior District Judge.

Plaintiffs Arthur M. Schwartz, Marnette Ritter and Marnie's Crewel Studio sue Celestial Seasonings, Inc. ("Celestial") and others for violations of securities laws. Pending are (1) Plaintiffs' Motion for Class Certification and Appointment of Lead Counsel and (2) Motions to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b) filed by Vestar/Celestial Investment Limited Partnership and the named individual Defendants (collectively, the "Celestial Defendants") and Paine-Webber, Inc. and Lehman Brothers, Inc. (collectively, the "Underwriter Defendants"). I grant the motion for class certification, appointing Schwartz and Ritter as the class representatives and their counsel as lead counsel. I deny the motions to dismiss.

### I. Introduction.

#### A. Factual Background.

On July 12, 1993, Celestial issued approximately two million shares of stock in an initial public offering ("IPO"). The IPO Prospectus revealed that Celestial was introducing new ready-to-drink iced tea products in an attempt to expand beyond its established hot tea business and had entered into a marketing agreement with Perrier Group of America, Inc. ("Perrier Agreement"), under which Perrier obtained exclusive rights to make and sell the new Celestial iced tea drinks in the United States and Canada. On January 25, 1994, Celestial made a secondary public offering of stock ("SPO") and the SPO prospectuses again discussed the new iced tea products and the Perrier Agreement. In May 1994, Celestial's stock prices declined after it announced it had entered discussions with Perrier to amend or terminate the Perrier Agreement.

Arthur M. Schwartz was the sole Plaintiff in this case until Marnette Ritter and Marnie's Crewel Studio moved to intervene last year. Schwartz is an experienced attorney, specializing in First Amendment law. He testified at deposition that he did not, in his personal capacity, purchase any shares of Celestial stock, but that his pension plan, the "Arthur M. Schwartz, PC, Employees Pension Trust," bought 500 shares of Celestial stock on July 21, 1993 at $30.50 per share in the IPO. Neither Schwartz nor his pension

plan bought any shares in the SPO of January 25, 1994.

Marnette Ritter is a Colorado resident who sought to intervene as a plaintiff in this case in October 1997. In September 1993, she and her husband, Earl Anthony Ritter purchased 100 shares of Celestial stock in the secondary market at $29.75 per share. She did not buy any shares in the IPO of July 12, 1993 or the SPO of January 25, 1994.

Marnie's Crewel Studio is a closely held corporation of which Marnette Ritter is a director. Her father, Fred Beck, and her daughter, Barrett Miller, are also directors of, and her husband an officer of, the company. Marnie's Crewel Studio bought 100 shares of Celestial stock in the secondary market on September 10, 1993 at $29.75 per share. Marnette Ritter caused the corporation to buy the shares because she could not afford to do so. In December, 1993, the company bought an additional 50 shares, again in the secondary market, at $24 per share.

### B. *Procedural History.*

On May 5, 1995, Schwartz filed a Class Action Complaint on behalf of himself and similarly situated purchasers of Celestial stock claiming that Celestial, despite knowingly or recklessly disregarding the fact that the Perrier Agreement was an illusion, made statements which misled investors to conclude that the agreement would enable it to use Perrier's resources to sell its new iced tea products. He sought damages claiming (1) primary liability for direct violations of § 11 of the Securities Act of 1993 and § 10(b) of the Securities and Exchange Act of 1934 (including Securities and Exchange Commission Rule 10b–5 promulgated thereunder); and (2) secondary liability of "control persons" for violations of § 15 of the 1933 Act and § 20 of the 1934 Act. *See* Securities Act of 1933, ch. 38, 48 Stat. 74 (codified as amended at 15 U.S.C. §§ 77a–77aa); Securities Exchange Act of 1934, ch. 404, 48 Stat.

881 (codified as amended at 15 U.S.C. §§ 78a–78mm).

On November 6, 1995, I granted Defendants' motions to dismiss for failure to satisfy the particularized pleading requirements of Fed.R.Civ.P. 9(b), and allowed Schwartz an opportunity to replead. *See Schwartz v. Celestial Seasonings, Inc.,* 904 F.Supp. 1191, 1201 (D.Colo.1995). When he elected not to amend the complaint, I dismissed the case in its entirety. Schwartz appealed to the United States Court of Appeals for the Tenth Circuit. On September 5, 1997 the appeals court reversed the judgment for Defendants and remanded to this court for further proceedings. *See Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1255 (10th Cir. 1997).[1]

On October 15, 1997, Schwartz filed Plaintiff's Motion for Class Certification and Appointment of Lead Counsel, On October 27, 1997, the Celestial Defendants and the Underwriter Defendants filed motions to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). On November 4, 1997, I granted the motions to intervene as plaintiffs filed by Marnette Ritter (misspelled as "Ridder") and Marnie's Crewel Studio. I heard oral argument on Plaintiffs' motion for class certification and Defendants' motions to dismiss.

### II. *Plaintiffs' Motion for Class Certification and Appointment of Lead Counsel.*

### A. *Requirements of Rule 23.*

Plaintiffs seek certification of a class comprising "all persons who purchased Celestial's common stock during the period from July 12, 1993, through and including May 18, 1994.... [excluding] defendants, members of their immediate families, their heirs, successors and assigns, and any subsidiary or affiliate of any defendant." (Compl. ¶ 26.)

▉ Rule 23 of the Federal Rules of Civil Procedure delineates the factors to be con-

---

**1.** The Tenth Circuit held the claim under § 11 of the Securities Act of 1933 was not subject to Rule 9(b); that the claim under § 10(b) of the Securities Act of 1934 was sufficient under Rule 9(b); and, as I had found, that the action was not barred by the statute of limitations. Since the

primary liability claims under §§ 11 and 10(b) did not fail, the Tenth Circuit found the rationale upon which I based the failure of secondary liability claims under §§ 15 and 20 was not valid. *See Schwartz,* 124 F.3d at 1255.

sidered in determining the propriety of a class action. *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 380 (D.Colo.1993). Whether a class may be certified is in the discretion of the court. *Id.* " '[A]n inquiry into the merits of the claims of the representative or the class is inappropriate when making the decision whether the action should be certified under Rule 23.' " *Id.* at 381 (quoting 7A Charles A. Wright et al., *Federal Practice and Procedure* § 1759 at 99 (1986)). In determining whether the requirements of Rule 23 have been met, however, it is often necessary to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses. *Cook*, 151 F.R.D. at 381.

In general, class actions are favored in securities fraud actions involving numerous plaintiffs. *In re Storage Tech. Corp. Securities Litigation*, 113 F.R.D. 113, 115 (D.Colo.1986). Certification is not irreversible and may be altered or amended before the decision on the merits. Fed. R.Civ.P. 23(c)(1). This power to change the class certification decision has encouraged many courts to be quite liberal in certifying a class when that decision is made at an early stage, noting that the action always can be decertified or the class description altered if later events suggest it is appropriate to do so. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

The party invoking Rule 23 has the burden of showing that all of the prerequisites to utilizing the class action procedure have been satisfied. *Cook*, 151 F.R.D. at 381. In order for this action to be maintained as a class action, Plaintiffs must first establish that the following requirements of Fed. R.Civ.P. 23(a) are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. These requirements are often referred to as numerosity, commonality, typicality, and adequacy of representation.

Second, Plaintiffs must establish that the case fits within one of the three subcategories of Rule 23(b). Here, they seek certification under Rule 23(b)(3) which requires a showing that the questions of law and fact common to the class predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy (superiority).

### 1. *Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." To satisfy the requirements of Rule 23(a), Plaintiffs must first adequately define the class and then establish that it is so numerous that joinder of all members is impracticable. *Cook*, 151 F.R.D. at 382. Defendants raise no objection to this first requirement.

The class is adequately defined as "all persons who purchased Celestial's common stock during the period from July 12, 1993, through and including May 18, 1994 ("the Class Period") [excluding] defendants, members of their immediate families, their heirs, successors and assigns, and any subsidiary or affiliate of any defendant." (Compl. ¶ 26.) The complaint alleges at least 1,900,000 shares of Celestial stock were sold in Celestial's July 12, 1993 IPO and 500,000 shares were sold in the SPO conducted in January 1994. (*Id.* ¶ 27a.) The reported trading volume of Celestial stock during the class period was over 23.35 million shares. (*Id.*) Thus it is fair to assume, in the absence of contrary evidence, that the purported class contains hundreds if not thousands of purchasers, making joinder impracticable. I therefore find that the required numerosity showing has been made.

### 2. *Commonality*

Rule 23(a)(2) provides that a class may be maintained only if "there are questions of law or fact common to the class." This does not require that all the questions of law or fact raised by the dispute be com-

mon; nor does it establish any quantitative or qualitative test of commonality. *Cook,* 151 F.R.D. at 385. " 'Unlike Rule 23(b)(3), which also requires that such common questions predominate over individual questions, the existence of significant common legal or factual issues is enough to satisfy Rule 23(a)(2)'s threshold commonality requirement.' " *Id.* (quoting *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 640 (D.Colo.1986)).

The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice. *Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983); *see also In re Intelcom Group, Inc. Sec. Litig.,* 169 F.R.D. 142, 148 (D.Colo. 1996). Nor need the injuries complained of be identical among the class members and the class representative; only the harm complained of must be common to the class. *Penn v. San Juan Hosp., Inc.,* 528 F.2d 1181, 1189 (10th Cir.1975); *Steiner v. Ideal Basic Indus., Inc.,* 127 F.R.D. 192, 193 (D.Colo.1987) (finding the common question of fact to be whether Ideal's stock was traded at artificially high prices throughout the class period because the Defendants made false or unrealistic statements during the class period concerning the value, prospects, operations and financial condition of Ideal and the common question of law to be whether the defendants' conduct violated the securities laws); *In re Storage Tech.,* 113 F.R.D. at 118–19 (having accepted the "fraud on the market" theory under which many individual factual questions were eliminated, the court found common questions of law and fact existed regarding the defendants' allegedly fraudulent conduct for the purposes of the Section 10(b) class).

Plaintiffs assert the common nucleus of facts arises from Defendants' misrepresentations and omissions during the class period regarding the supposed advantages of Celestial's agreement with Perrier and the company's expected financial results. The questions of law and fact alleged in the complaint which are common to all members of the class include (a) whether the defendants violated the federal securities laws, the securities laws of the State of Colorado and/or common law by participating in the acts alleged in the complaint; (b) whether documents and statements publicly disseminated by Defendants were materially false and misleading and/or omitted material facts about the business prospects and financial condition of Celestial; (c) whether Defendants acted negligently in preparing and disseminating the materially false and misleading prospectuses; (d) whether Defendants acted knowingly or intentionally or with reckless disregard for the truth thereof in disseminating the materially misleading information identified in the complaint; (e) whether the market price of Celestial's common stock was artificially inflated at the time of the IPO and during the Class Period due to the nondisclosures and/or misrepresentations alleged in the Compliant; and whether the named Plaintiffs and other members of the Class have sustained damages and, if so, the measure of damages. (Compl. ¶ 28.)

I am satisfied that the claims concerning the misrepresentations involve a common scheme affecting the entire class and form a common nucleus of operative facts that fulfills the commonality requirement of Rule 23(a)(2).

### 3. *Typicality.*

A class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied. *Cook,* 151 F.R.D. at 385. The positions of the named plaintiffs and the potential class members do not have to be identical. "Thus, the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class." 7A Wright, *supra* § 1764 at 235–41.

Plaintiffs assert the central issue in this case is whether Defendants engaged in a course of conduct violative of federal and

state securities laws and the common law by failing to disclose and misrepresenting information material to the members of the class. They maintain the claims of the representative plaintiffs arise out of the same course of conduct and are based on the same theories as those of the absent class members and thus their interests are coextensive with and typical of those of all class members.

Defendants raise the issue that Plaintiffs do not satisfy either the typicality or adequacy of representation requirements because they lack standing to pursue the § 11 claims, an issue which I address below in the discussion on standing. In addition, Defendants argue Schwartz lacks standing to pursue any claim in the complaint as he is not the proper plaintiff in this action. They assert his pension plan, not he, purchased the Celestial stock and is the real party in interest. As such, they argue, Schwartz's non-existent claims cannot typify the class' claims and he cannot qualify as a representative plaintiff.

Relying on Federal Rule of Civil Procedure 17(a), Plaintiffs respond that Schwartz, as trustee and sole beneficiary of the pension plan, is the real party in interest in this action. They also attach to their reply Schwartz' declaration as trustee of the plan ratifying the litigation to date and authorizing its continuation. Rule 17(a) provides: "Every action shall be prosecuted in the name of the real party in interest. [A] ... trustee of an express trust ... may sue in that person's own name without joining the party for whose benefit the action is brought." Fed.R.Civ.P. 17(a). I reject Defendants' argument in this regard and find Schwartz, as trustee and as the sole beneficiary of the plan, qualifies as the real party in interest. *See Isola v. Hutchinson,* 780 F.Supp. 1299, 1301–02 (N.D.Cal.1991) (rejecting defendants' claim that plaintiff, the sole remaining participant in a profit-sharing plan, lacked standing to bring suit).

I find the named Plaintiffs' claims arise out of the same alleged course of conduct and are based on the same theories as those of the absent class members, namely that Defendants engaged in a course of conduct violative of federal and state securities laws and the common law by failing to disclose and misrepresenting information material to the members of the class. To this end, I find the interests of the named Plaintiffs coextensive with and typical of those of all class members and that they satisfy the typicality requirement.

### 4. *Adequacy of Representation.*

I may certify a class if "the representative parties will fairly and adequately protect the interests of the class," Rule 23(a)(4). This requirement dovetails with the last in that typicality ensures that the class representative's claims resemble the class' claims to an extent that adequate representation can be expected. *In re Intelcom Group,* 169 F.R.D. at 148.

What constitutes adequate representation is a question of fact that depends on the circumstances of each case. 7A Wright, *supra* § 1765 at 269. Criteria for assessing adequacy of representation include whether the plaintiff has common interests with the class members and whether the representative will vigorously prosecute the interests of the class through qualified counsel. *Id.* The plaintiff has the initial burden to show facts to support a finding that it will adequately protect the interests of the class. 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 7.24 (3d ed.1992). Once the plaintiff has made a prima facie showing of adequate representation, the burden shifts to the defendant. *Id.* Absent evidence to the contrary, a presumption of adequate representation is invoked. *Id.* Any doubt regarding adequacy of representation should be resolved in favor of the upholding the class, subject to later possible reconsideration, or the creation of subclasses initially. *Id.*

Defendants maintain the named Plaintiffs are inadequate representatives because they lack sufficient knowledge of their claims and have given unfettered control of the litigation to their lawyer, do not have the same interests as the absent members of the proposed class and have not suffered the same injury, and are unaware of their duty or are unwilling to finance the litigation.

### (i) *Knowledge of claims*

██ "A finding of adequacy [of representation] includes the findings that the plaintiffs are knowledgeable as to the status and underlying legal basis of the action, that they are willing and able to pay notification and other costs, that they will diligently pursue their claims, and that their interests are not antagonistic to the interests of the class." *In re Storage Tech.*, 113 F.R.D. at 118 (finding plaintiffs who were "unaware of even the most material aspect of [the] action" to be inadequate representatives, as were those who "did not know why particular defendants [were] being sued" and "appeared to have no conception of the class of people . . . purportedly represent[ed]").

Defendants argue the named Plaintiffs are not adequate representatives because they are not familiar with the basic elements of their claims. I disagree. The record reflects that Ritter understands the nature of Defendants' alleged deception and how it caused her to overpay for her stock, is familiar with the basic outline of the action, and understands the gravamen of the claims. Moreover, she understands the nature of the class action and her role in it, and that, if necessary, all in the class would share costs proportionately. She has stated her willingness and ability to pay her share of such costs. The record also shows that Schwartz understands the essence of this case, the nature of a class action, his role as class representative, and his obligation to be responsible for his *pro rata* share of the costs.[2]

██ Defendants pose no objection to the experience and commitment of Plaintiffs' counsel. This in itself goes a long way to negating their argument that the class will be inadequately represented. Rule 23(a)(4) is satisfied if the plaintiff has common interests with the class and will vigorously prosecute the interests of the class through qualified counsel. *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 386 (1993). *See also In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 109 (N.D.Ill.1996) (so long as counsel is qualified, plaintiff need only have "general knowledge and participation in his underlying claims"); *Adair v. Sorenson*, 134 F.R.D. 13, 19 (D.Mass.1991) ("[Plaintiff] understands the issues behind the Complaint, appears dedicated to the vigorous prosecution of the case and is represented by counsel who are qualified to vigorously prosecute the case").

Moreover, I disagree with Defendants' position that Plaintiffs are unaware of their duty or are unwilling to finance the litigation. Taken as a whole, the evidence before me indicates that, while Plaintiffs' counsel are advancing the costs of the litigation, Plaintiffs are willing to be responsible for their *pro rata* share of those costs and, if necessary, an additional increment of the class' costs. *See Rand v. Monsanto Co.*, 926 F.2d 596, 600 (7th Cir.1991).

### (ii) *Corporate Status of Marnie's Crewel Studio.*

██ Although the parties have not addressed the issue, I find Marnie's Crewel Studio, by virtue of its corporate status, inadequate to represent the interests of individual class members.

By its very nature a corporation's ownership, decision-making processes, and motivations are vastly different than [sic] those of individuals. For example, corporate decision-makers may be influenced by considerations that would not affect individuals. Corporate existence is infinite, but the corporation's board and management can change radically over time, either by virtue of new ownership, a simple restructuring of management, or bankruptcy. Corporate acts are taken after a decision of the board or management, and accordingly, those de-

---

2. Based on select passages of the Schwartz and Ritter depositions, Defendants argue Plaintiffs lack factual support for the allegations in the complaint and have given their counsel complete control over the lawsuit. This contention is without merit. *See In re Frontier Insur. Group Inc., Sec. Litig.*, 172 F.R.D. 31, 46 (E.D.N.Y.1997) ("in the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance or credibility are rarely appropriate") (further quotation omitted); 4 *Newberg on Class Actions* § 22.24 ("inadequacy challenges based on personal qualifications of a representative plaintiff who is not required to have a detailed understanding of the securities field are generally unwarranted and serve only to burden unduly the class determination process").

cisions, which can only be made after a properly convened meeting, may be a product of an internal corporate compromise, and therefore, not in the best interests of individual class members.

*In re LILCO Sec. Litig.,* 111 F.R.D. 663, 672 (E.D.N.Y.1986).

Marnie's Crewel Studio's potential conflicts of interest make it an inadequate representative. Moreover, I find it unnecessary to have the corporation as a third class representative when there are already two individuals, Schwartz and Ritter, who are adequate to represent the class.

### 5. *Requirements of Rule 23(b)(3).*

■ For certification as a class action, the suit must, in addition to meeting the prerequisites of Rule 23(a), satisfy one of the three conditions of Rule 23(b). Plaintiffs rely on Rule 23(b)(3) which requires a finding that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. For the reasons already stated, I find the central issues of the action to be whether Defendants engaged in the alleged fraudulent course by omitting to disclose and/or misrepresenting

material facts about their ready-to-drink line of teas. I find such issues involve questions of law and fact common to all members of the proposed class which will predominate over questions affecting individual members and that a class action is superior to other available methods of adjudication. Accordingly, the additional Rule 23(b)(3) prerequisites are met.

### B. *Standing.*

■ Defendants assert none of the named Plaintiffs has standing to pursue a § 11 claim because they did not purchase stock in either of the two public offerings challenged by the complaint.[3] They interpose this issue as part of their argument that Plaintiffs have not satisfied the typicality requirement. Whereas typicality concerns whether common questions of fact or law unite the class, standing is a jurisdictional issue, concerning the power of federal courts to hear and decide cases.[4]

Defendants rely on *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) where the Court held only persons who purchased securities in a public offering by an issuer and its controlling shareholders may assert a claim pursuant to § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2).[5] Although not confronted

---

**3.** Section 11 of the Securities Act of 1933 concerns civil liabilities on account of a false registration statement and provides in pertinent part:
(a) In case any part of the registration statement ... contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security ... may ... sue—
(1) every person who signed the registration statement; (2) every person who was a director of ... the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted....
15 U.S.C. § 77k(a)(1) and (2).

**4.** Even if I were to conclude that one or more of the named Plaintiffs does not have § 11 standing, this would not render that plaintiff atypical. The common question of whether the registration statement was materially misleading predominates over any secondary tracing issues that might be encountered. Moreover, if I were to determine that only certain members of the class have standing, namely those who can trace their stock to one of the two offerings, this is not a

basis to deny certification but, at a later time, to fashion a sub-class for the benefit of those members.

**5.** Section 12 of the Securities Act of 1933 concerns civil liabilities arising in connection with prospectuses and communications and provides in pertinent part:

(a) In general
Any person who—
...
(2) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
shall be liable ... to the person purchasing such security from him ... to recover the consider-

with the issue of who may assert a § 11 claim under the same act, the Court's dicta indicated its holding applies to § 11 claims as well. *Id.* at 572, 115 S.Ct. at 1068.

*Gustafson* turned on the majority finding that a private contract is not an offering document covered by the term "prospectus," the only type of offering document to which § 12(2) applies. *Id.* at 569–70, 115 S.Ct. at 1066–67. Thus, after *Gustafson*, § 12(2) claims to rescind the sale of securities can be brought only where such sales occurred in a public offering.

Defendants argue that because §§ 11 and 12(2) share similar legislative history, § 11 claims are available only to persons who purchase securities in a public offering, and not to those who purchase in aftermarket trading. They seek to eliminate the "tracing" doctrine which enables purchasers of shares issued in connection with a false registration statement to bring a § 11 claim, provided that those shares are traceable to the public offering, regardless of whether they were purchased in the public offering or in a subsequent aftermarket transaction from someone other than the issuer or underwriter. They cite the decisions of some district courts which have accepted this argument and expanded the *Gustafson* holding to disallow the § 11 claims of purchasers who can trace and/or show that their shares were those offered in connection with a false registration statement. *See, e.g., In re WRT Energy Sec. Litig.,* No. CIV. 3610 (JFK), 1997 WL 576023, at *6 (S.D.N.Y. Sept. 15, 1997) (dismissing plaintiffs' § 11 claims for lack of standing because plaintiffs did not allege they purchased the securities in a public offering); *Gould v. Harris,* 929 F.Supp. 353, 359 (C.D.Cal.1996) (dismissing the § 11 cause of action for failure adequately to allege that the securities were purchased in the offering rather than in the secondary market); *see also Gannon v. Continental Ins. Co.,* 920 F.Supp. 566, 575 (D.N.J.1996).

Plaintiffs reply that *Gustafson* does not deprive them of their statutory rights under

§ 11 because the Court reached the limited holding that § 12(2), which provides buyers with an action for rescission against sellers who make material misstatements or omissions "by means of a prospectus," does not extend to a private, secondary transaction in unregistered securities, on the theory that recitations in the purchase agreement used in such transactions are part of a "prospectus." Rather, *Gustafson* concluded that § 12(2) is restricted to claims concerning misleading prospectuses used in public offerings of securities. 513 U.S. at 579–80, 115 S.Ct. at 1071–72. Thus *Gustafson* dealt only with the application of § 12(2) to private placement transactions (finding that the offering must be a public one) and with the statutory definition of "prospectus" under that section (finding that a "prospectus" does not include a contract of sale used in a private transaction). Plaintiffs argue the Court did not address, in *dicta* or otherwise, the scope of § 11's pronouncement that "any person acquiring such security" may bring a § 11 claim. I agree.

Section 12(2) provides that any person who "offers or sells a security" by means of a prospectus which includes an untrue statement of a material fact or omits to state a material fact is "liable to the person purchasing such security from him" unless "he did not know, or in the exercise of reasonable care could not have known, of such untruth or omission." In other words, only those who purchase directly from the person who sold the security by means of an alleged false prospectus may bring a § 12(2) claim. In light of this express privity requirement, although *Gustafson* did not address the issue of standing under § 12(2), it is understandable that the holding could be expanded to require § 12(2) claimants to have purchased their securities in a public offering (from a seller who sold "by means of a prospectus"), rather than in an aftermarket transaction.

Section 11 is distinguishable from § 12(2), however, in that the former contains no language which can be read to limit claims only

ation paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*(a)(2).

to those investors who purchase their shares directly in a public offering. To the contrary, § 11 provides that if at the time a registration statement becomes effective it contained an untrue statement of a material fact or omitted to state a material fact required to be stated or necessary to make those statements not misleading, "any person acquiring such security" may sue those who bear responsibility for the contents of the registration statement. Thus, under the plain language of § 11, any purchaser may bring a claim as long as he can prove that the securities acquired were issued in connection with a false registration statement, i.e., if the shares can be traced to the offering.[6] *See Versyss, Inc. v. Coopers & Lybrand,* 982 F.2d 653, 657 (1st Cir.1992), *cert. denied,* 508 U.S. 974, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993) (holding § 11 extends to any person acquiring a security that was registered in a public offering via a materially misleading statement, as long as that person brings his or her claim within the applicable statute of limitations).

Other provisions of § 11 also compel the conclusion that it applies to aftermarket purchasers. The section was amended in 1934 to add the requirement that if a purchaser of a security "acquired the security after the issuer had made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement," the right of recovery shall be conditioned on proof that he relied upon the untrue statement or omission in the registration statement. 15 U.S.C. § 77k(a). By requiring those who purchase registered stock after the publication of the twelve-month earning statement to prove reliance, the statute contemplates relief for those who purchase shares after the public offering.[7]

Similarly, the provisions in § 11 regarding the calculation of damages envisage relief for aftermarket purchasers. Section 11(e) provides a purchaser of securities issued in connection with a false registration statement may sue to recover "such damages as shall represent the difference between the amount paid [by plaintiff] for the security (not exceeding the price at which the security was offered to the public)," and the value of the security at the time that the suit was brought or the price at which the security was disposed of, 15 U.S.C. § 77k(e). Section 11(g) further states: "In no case shall the amount recoverable under this section exceed the price at which the security was offered to the public." 15 U.S.C. § 77k(g).

I find, notwithstanding *Gustafson,* that § 11 extends not only to persons who buy "in the Offering," but to all persons who acquired stock traceable to a public offering conducted *via* a misleading registration statement. *See PPM America, Inc. v. Marriott Corp.,* 820 F.Supp. 970, 975 (D.Md.1993) ("any person" acquiring a registered security may state a § 11 claim, so long as it is issued pursuant to a misleading registration statement). Although the Tenth Circuit has not treated the issue of § 11 tracing post-*Gustafson,* certain district courts have since recognized that tracing remains a viable method for establishing that plaintiffs' shares were "acquired" in connection with a misleading registration statement and that they should therefore have claims under § 11. *See Harden v. Raffensperger, Hughes & Co.,* 933 F.Supp. 763, 766 (S.D.Ind.1996) ("most significant of the procedural standards [facing a § 11 claimant] is the requirement that a plaintiff be able to trace the security ... to the specific registration statement at issue"); *In re Numerex Corp. Sec. Litig.,* 913 F.Supp. 391, 395 n. 4 (E.D.Pa.1996) (for purposes of a motion to dismiss, the court "assume[s] that plaintiffs' shares ... can be sufficiently traced to the prospectus"); *Stack v. Lobo,* 903 F.Supp. 1361, 1374 (N.D.Cal.1995) (ac-

---

6. The section's legislative history supports this conclusion. In recommending that the statute be passed, the House of Representatives stated the civil remedies afforded by § 11 are to be given to purchasers "regardless of whether they bought their securities at the time of the original offer or at some later date." H.R.Rep. No. 85, 73d Cong., 1st Sess. 22 (1933).

7. In approving this amendment to § 11, the Speaker of the House stated: "[W]e agree to an amendment ... which provides that after the first financial statement of the issuer is made, then the man who buys a security in commerce after that must prove that he relied upon the statement." 78 Cong.Rec. 10266 (June 1, 1934).

knowledging that "[c]laims may be brought under §§ 11 and 12(2) by those who purchased securities in a public offering and by those whose securities are traceable to the public offering").

To the extent that other cases cited by Defendants would deny standing to Plaintiffs in this case, I consider them wrongly decided. None of them address the text of § 11, specifically allowing plaintiffs who purchased even over a year after an offering to bring a claim under that section, subject to proof of reliance, its damage provisions, addressing situations where plaintiffs bought stock at prices other than the offering price, or its relevant legislative history.

I conclude, under the express terms of § 11, Plaintiffs Schwartz and Ritter have standing to bring § 11 claims, provided that they can trace their stock to one of the two offerings. The issue of tracing is a merits issue, not appropriate for consideration here. It would be improper to deny class certification because either representative Plaintiff might have difficulties in proving his or her case. At this stage, Plaintiffs need only show that the Rule 23 requirements have been met.

## C. *Ruling on Motion for Class Certification.*

For the aforesaid reasons, I find Plaintiffs Schwartz and Ritter have carried their burden of showing that the requirements of Rule 23(a) and (b)(3) are met. I certify this action as a class action on behalf of the class of persons who purchased Celestial's common stock during the period from July 12, 1993, through and including May 18, 1994, excluding Defendants, members of their immediate families, their heirs, successors and assigns, and any subsidiary or affiliate of any Defendant ("the Class").[8] I appoint Plaintiffs Schwartz and Ritter as the named representatives of the Class and their counsel, the Law Offices of Dennis J. Johnson and Bader Villaneuva & Feder, P.C., as lead counsel to the Class.

## III. *Motions to Dismiss.*

### A. *Introduction.*

In reversing the judgment for Defendants and remanding the case to this court for further proceedings, the Tenth Circuit has concluded that the complaint sufficiently states a § 10(b) securities claim under the particularized pleading requirements of Fed. R.Civ.P. 9(b). *Schwartz*, 124 F.3d at 1255. In so doing, it determined that the complaint adequately "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* at 1252 (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir.1991)). In other words, the appeals court determined that the complaint states with particularity the "who, what, when, where, and how," *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir.1997), of the alleged fraud. *Iacta alea est.*

The Tenth Circuit declined, however, to address two additional alternative grounds for affirmance which Defendants had presented, "(1) that the [Initial Public Offering] Prospectus 'bespoke caution'; and (2) that twenty-one 'post-Prospectus' statements are not actionable" on grounds that these arguments failed to address all of the statements alleged in the complaint to violate federal securities laws, presented only grounds to affirm in part, and though raised, had not been addressed in this court. *Id.*

Defendants suggest either the Tenth Circuit was mistaken in its belief that these arguments failed to address all of the statements set forth in the complaint or that it was considering statements set forth in the complaint but which the Plaintiffs acknowledge were made after the end of the class period. Plaintiffs argue Defendants missed their opportunity to correct the perceived mistake by failing either to request reconsideration of the opinion or to appeal the decision and that the holding that the bespeaks caution doctrine does not dispose of all claims is now the law of this case. I find, however, that the Tenth Circuit's statement in this

---

**8.** Because I conclude only those members of the proposed class who can trace their stock to one of the two offerings, have standing to bring § 11 claims, it may be appropriate, at a later time, to fashion a sub-class for the benefit of those members.

regard was dicta in that it concerned a legal proposition not essential to the determination of the case on hand and did not reach the arguments which Defendants now present. Such dicta is not subject to the law of the case doctrine and I am not precluded from reaching the issues presented in the pending motions. *See United States v. Rice,* No. 95–2174, 1996 WL 44452, at *4 (10th Cir. Feb. 5, 1996), 76 F.3d 394 (table), *cert. denied,* 518 U.S. 1011, 116 S.Ct. 2536, 135 L.Ed.2d 1058 (1996).

Plaintiffs challenge the accuracy of statements made in the 1993 Prospectus and in press releases, analysts' reports and Celestial's Security Exchange Commission ("SEC") filings during the alleged class period of July 12, 1993 to May 18, 1994 which, they assert, falsely led investors to believe that "Celestial would obtain a substantial market for its ready-to-drink tea in the very near future, with a resulting increase in earnings and profits," (Compl. ¶ 21). According to Plaintiffs, certain representations in the 1993 Prospectus were materially misleading in that Defendants stressed the viability of the Perrier Agreement and its prospects (when they already knew the agreement was not viable) and, in so doing, "intended that investors would look at Celestial as an immediately viable competitor to Snapple in the exploding market for ready-to-drink teas," (Compl. ¶ 33).

In the pending motions to dismiss, Defendants challenge the complaint under Rule 12(b)(6) for failure to state a claim under which relief can be granted.[9] They assert the statements challenged do not satisfy the materiality element of a § 11 or § 10(b) claim because they were (1) vague statements of corporate optimism and/or (2) ac-

companied or preceded by warnings which contained sufficient cautionary language to render the challenged statements immaterial under the "bespeaks caution" doctrine as applied in *Grossman v. Novell, Inc.,* 120 F.3d 1112 (10th Cir.1997);[10] and (2) that all the statements made after Celestial's 1993 IPO Prospectus are inactionable because they were accurate statements of fact or statements of analysts for which Celestial cannot be held liable.

#### B. *Applicable Law.*

Dismissal is appropriate under Rule 12(b)(6) when it appears the plaintiff can prove no set of facts in support of the claims that would entitle him to relief. *See Grossman,* 120 F.3d at 1118. All well-plead allegations of the complaint are accepted as true and construed in the light most favorable to the plaintiff. *Id.* "In the securities context, Rule 12(b)(6) dismissals are difficult to obtain because the cause of action deals primarily with fact-specific inquir[ies] such as materiality." *Id.* (further quotation omitted).

▆▆▆▆ To satisfy the materiality element of both a § 11 and a § 10(b) claim, a plaintiff must allege facts showing that the defendant made an untrue statement of material fact, or failed to state a material fact necessary to make the statements that were made not misleading. 15 U.S.C. 77k; 17 C.F.R. § 240.10b–5. A statement or omission is material only if a reasonable investor would consider it important in determining whether to buy or sell stock. *Grossman,* 120 F.3d at 1119. Whether information is material depends on other information already available to the market. *Id.* Unless the statement "significantly altered the 'total

---

**9.** The Celestial Defendants attach to their motion a copy of the 1993 Prospectus which is referred to in the complaint and contains the risk disclosures on which they rely concerning the Perrier Agreement. Where, as here, a plaintiff's claims are based on a prospectus, I may properly consider it when submitted with defendants' motion to dismiss, without converting the motion to one for summary judgment. *See In re Donald J. Trump Casino Sec. Litig.,* 7 F.3d 357, 368 n. 9 (3rd Cir.1993). In *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1116 n. 2 (10th Cir.1997), the court noted that the parties and the district court had

all referred liberally to the registration statement and amendments thereto even though they were not explicitly incorporated in the complaint. The Tenth Circuit also referred to these documents based on the apparent consent of the parties that they could be considered in the motion to dismiss. I therefore consider the 1993 Prospectus in determining the pending motions to dismiss.

**10.** The Tenth Circuit decided *Grossman* four weeks *before* its decision in this case.

mix' of information" available, it would not be considered material. *Id.*

■ In *Grossman,* the Tenth Circuit noted that, in considering the materiality element, courts have identified certain categories of statements which are not considered materially misleading. These include statements considered immaterial because they are only vague statements of corporate optimism and those considered immaterial because other statements available to the investing public "bespoke caution" about the subject matter of the alleged misstatement. *Id* .

■ "Statements classified as 'corporate optimism' or 'mere puffing' are typically forward-looking statements, or generalized statements of optimism that are not capable of verification. Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions." *Id.* (further quotation and footnote omitted). Nevertheless, a statement as to a belief or opinion may be actionable if at the time of expressing the opinion, the speaker knows it to be untrue or to have no reasonable basis in fact. *Id.* at n. 6.

■ Under the bespeaks caution doctrine, "[f]orward-looking representations are considered immaterial when the defendant has provided the investing public with sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of the statements at issue to nullify any potentially misleading effect." *Id.* at 1120. The doctrine may properly be applied in considering a motion to dismiss. *Id.* at n. 7. To immunize statements relating to the disclosure, "the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions ... which Plaintiffs challenge." *Id.* at 1120 (further quotation omitted). The underlying principle is that statements must be analyzed in context when determining whether or not they are materially misleading. *Id* .

In *Grossman,* plaintiffs alleged that various statements issued by defendants after Novell's public offering were misleading because they failed to disclose the negative financial effect which two pending mergers would have on the corporation. The court noted the statements complained of were all contained in press releases or interview statements and were made in conjunction with a registration statement that contained many explicit risk factors and warnings which Grossman had not challenged as inadequate. The three page long "Risk Factors" discussion in the initial registration statement as well as the amendments thereto contained numerous cautionary statements regarding the precise subjects addressed in the alleged misstatements. The disclosures described the risks involved with Novell's proposed mergers and were specifically tailored to address the uncertainty and possible negative outcomes associated with the plans for such mergers. The Tenth Circuit concluded the "disclosures were highly specific, very factual, and directly address the predictive statements that form the basis of Grossman's Complaint." *Id.* at 1121.

C. *Analysis.*

(i) *Corporate Optimism.*

■ Defendants argue certain of the alleged misstatements were immaterial statements of corporate optimism. They cite *Grossman,* where the court determined that the following statements fell into this category:

> Frankenburg's statements that Novell had experienced "substantial success" in integrating the sales forces of the two companies, that the merger was thus moving "faster than we thought," and that the merger presented a "compelling" set of opportunities for the company; and that it "expects network applications will quickly reshape customer expectations."

*Id.* at 1121. According to Defendants, statements such as the 1993 statement of Mo Siegel, then Celestial's Chairman and Chief Executive Officer, "I believe that everything we did in 1993 put Celestial Seasonings on a firm track for growth" ... were mere puffery, incapable of objective verification, and, as such, are not actionable. Plaintiffs respond that the Siegel statement, issued in the same document containing Defendants' minimum royalty payment statement, was

important to investors as it stood as conformance that the Perrier Agreement's long-term future was a bright one. Moreover, this and other statements, Plaintiffs maintain, were uttered with knowledge of their falsity in the full context of the facts.

In the instant case, the Tenth Circuit accepted for the purposes of resolving the Rule 9(b) motion that the complaint alleges for the most part that Defendants misrepresented Celestial's current agreement with Perrier, identifies the factors that were not disclosed to investors at the time, and asserts such factors preexisted the alleged misrepresentations. This background predominantly informs the Rule 12(b)(6) analysis. Here, unlike in *Grossman*, in considering the issue of the materiality of the alleged false statements, I am bound by the Tenth Circuit's conclusion that Plaintiffs have adequately explained why the statements or omissions were misleading at the time they were made and have sufficiently alleged the adverse facts known to Defendants at that time. *See Schwartz*, 124 F.3d at 1252–55. In other words, the Tenth Circuit has determined that Plaintiffs have adequately pleaded that at the time the challenged statements were made, they were known to be false.

Given such premise, each of the statements cited by Defendants as corporate optimism could reasonably be interpreted as conveying a level of confidence in the viability of the Perrier Agreement and its effects on the distribution of Celestial's products, particularly the ready-to-drink teas, not borne out by the adverse facts which the complaint alleges were known to Defendants at the time the statements were made. *See Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir.1995) (statement that a company "anticipates a continuation of its accelerated expansion schedule" and the company "feel[s] a little more optimistic about our near term future than [it] did at the end of the last quarter" held to be actionable), *cert. denied*, 517 U.S. 1136, 116 S.Ct. 1422, 134 L.Ed.2d 547 (1996).

Take, for example, the statement that "[t]he Company believes these strategies of new product introductions and new channels of distribution, coupled with its continued commitment to high-quality products, will en-

hance its position as a leading specialty beverage company." (Compl. ¶ 38.) The Tenth Circuit has concluded that for pleading purposes the complaint adequately states Defendants knew this opinion was false at the time when it was made. Given this determination, I am bound by the acknowledgment of the court of appeals that a statement of belief may be actionable "if the opinion is known by the speaker at the time it is expressed to be untrue or to have no reasonable basis in fact." *See Grossman*, 120 F.3d at 1120 n. 6 (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1093–94, 111 S.Ct. 2749, 2758–59, 115 L.Ed.2d 929 (1991)). I must therefore conclude at this stage of the proceedings that this statement is actionable. The same reasoning applies to each of the other statements which Defendants argue evidence mere corporate optimism.

I disagree with Defendants that *Fecht* and *Virginia Bankshares* and other cases relied on by Plaintiffs are distinguishable in that they concerned assertions deemed to be ones of hard objective fact. Whether the commercial judgments inherent in the statements at issue were capable of objective verification involves an inquiry as to precisely which facts were known to Defendants at the time the statements were made. In other words, if Plaintiffs establish that Defendants had knowledge of facts which rendered a disputed opinion false, then a fact finder will determine that such assertion was uttered with knowledge of falsity "just like more definite statements." *See Virginia Bankshares*, 501 U.S. at 1093, 111 S.Ct. at 2758. Accepting now that at the time the numerous misstatements were made, Defendants knew each of them to be false, I cannot say that no reasonable investor would have considered any of the them on its own or in combination with the others significant in making the decision to invest or so obviously immaterial that they should be dismissed as a matter of law. *See Grossman*, 120 F.3d at 1119.

(ii) *Bespeaks Caution Doctrine.*

Turning to the bespeaks caution doctrine, Defendants again rely on *Grossman* in arguing that certain cautionary statements contained in the 1993 Prospectus would have

placed any reasonable investor on notice about the indefinite nature of the future prospects of Celestial as a whole and its iced tea initiatives, including the Perrier Agreement in particular. They assert certain statements appearing under "Investment Considerations" in the 1993 Prospectus constituted cautionary statements tailored to the specific future projections, estimates or opinions which Plaintiffs challenge.

As mentioned above, in *Grossman,* the Tenth Circuit premised its application of the bespeaks caution doctrine to certain forward looking statements on the finding that the "disclosures were highly specific, very factual, and directly address the predictive statements" that formed the basis of the complaint. *See Grossman,* 120 F.3d at 1121. For example, the statement regarding the dilution of "future" earnings was nullified by the registration statement's clarification that Novell expected earnings to fluctuate drastically in the years following the merger, and, in particular in the third quarter. The court considered the aspects of the statements concerning "the 'compelling opportunities' available to Novell, the manner in which Novell was moving rapidly toward a 'fully integrated sales force' and 'leveraging' the 'combined knowledge' of the two companies, and the degree to which the company would 'quickly reshape customer expectations' " to be general forward looking projections dealing with subjects addressed in far greater detail in the cautionary statements of the registration statement and its amendments. *Id.*

*Grossman* took into account the total mix of information available to the market at the time of the alleged fraudulent statements. The court noted that while the cautions were contained in the formal registration statement and its amendments, the alleged misleading predictions were found in less formal press releases and interviews at about the same time, and dealt with transactions described in great detail in the formal documents. In the circumstances of the case, the Tenth Circuit considered the cautionary statements in the registration statement as limiting the forward-looking predictions in the releases and interviews.

Defendants argue the 1993 Prospectus addressed in detail the terms of the Perrier Agreement including the termination provisions, and contained specific warnings concerning the competitive nature of the beverage market, the aggressive competition in the ready-to-drink tea market and the fact that the market for Celestial's iced herb tea was unproven. Thus, they maintain, the prospectus warned investors that no assurance could be made that the Perrier Agreement would be successful for Celestial. In addition, the prospectus disclosed that Perrier had promoted the ready-to-drink product in test markets and planned to sell the product in 14 metropolitan markets in 1993 and that Nestle, Perrier's parent company, also participated in the ready-to-drink market. These disclosures, they argue, were tailored to prevent reasonable investors from developing unreasonable expectations as to the success of the Perrier Agreement and, under *Grossman,* render Plaintiffs' allegations of misrepresentations immaterial as a matter of law.

■ I find the alleged cautionary statements relied on by Defendants, unlike those in *Grossman,* are not "highly specific, very factual, and directly address[ing] the predictive statements" that form the basis of the complaint. *See Grossman,* 120 F.3d at 1121. Significantly, the Tenth Circuit in *Grossman* found additional weight was to be attributed to the cautionary statements which were contained in the formal registration statements as opposed to the alleged misstatements contained in press releases. Here, however with regard to the alleged misstatements in the prospectuses, there is no distinction between the relative formality of and weight to be attributed to the document containing the forward looking statements versus that containing the cautionary statements since all were contained in the same document. While Defendants might ultimately prevail at trial if they can successfully demonstrate that their statements were intended to and did convey appropriate caution thus rendering alleged forward looking statements and omissions immaterial, at this stage I must draw all inferences in Plaintiffs' favor.

I conclude on the facts alleged in the complaint, reasonable minds could differ as to the meaning and implication of Defendants' disclosures in their full context, i.e., as to whether the risk disclosures were adequate in light of the "total mix of information" then available. *See Grossman*, 120 F.3d at 1122.[11] Thus, I deny dismissal on the basis of the bespeaks caution doctrine.[12]

### D. *Conclusion on Motions to Dismiss.*

For the aforesaid I deny the motions to dismiss. Accordingly,

IT IS ORDERED THAT this action is certified as a class action on behalf of the class of persons who purchased Celestial's common stock during the period from July 12, 1993 through and including May 18, 1994, excluding Defendants, members of their immediate families, their heirs, successors and assigns, and any subsidiary or affiliate of any Defendant ("the Class");

IT IS FURTHER ORDERED THAT Plaintiffs Arthur M. Schwartz and Marnette Ritter are appointed as the named representatives of the Class and their counsel, the Law Offices of Dennis J. Johnson and Bader Villaneuva & Feder, P.C., as lead counsel to the Class.

IT IS FURTHER ORDERED THAT the Celestial Defendants' Motion to Dismiss the Class Action Complaint is DENIED;

IT IS FURTHER ORDERED THAT the Motion of Defendants Paine Webber, Inc. and Lehman Brothers Inc. to Dismiss Class Action Complaint with Prejudice is DENIED.

IT IS FURTHER ORDERED THAT on or before **April 20, 1998,** the Defendants shall file their respective answers to the Class Action Complaint;

IT IS FURTHER ORDERED THAT this case is set for a status conference and a scheduling conference on **Wednesday, April 29, 1998 at 9:00 a.m. in Courtroom C–401.** The parties shall submit a stipulated Scheduling and Discovery Order on or before **Friday, April 24, 1998.** (See enclosed instructions for proper formatting of this order.) Counsel shall read and strictly adhere to all instructions attached. Particular attention is called to Part V, regarding motions for summary judgment.

---

11. Because I reach this conclusion, I do not address Plaintiffs' argument that the bespeaks caution doctrine does not apply to some of the alleged misrepresentations because they are not forward-looking nor the issue of whether some of the alleged cautionary statements concern the ready-to-drink iced tea market.

12. Defendants further argue the post–1993 prospectus statements challenged in the complaint are inactionable because they are undisputedly accurate statements of fact concerning Celestial's business or the Perrier Agreement, that Plaintiffs have not alleged that any of them were inaccurate, and any claims on these statements must be dismissed. As already stated, the Tenth Circuit has determined the complaint adequately alleges the manner in which the statements were misleading, implicitly rejecting the Defendant's fraud by hindsight argument. Further, because at this stage I must accept the allegations as true and construe them in the light most favorable to Plaintiffs, dismissal on the grounds of their inaccuracy is not warranted. *See Grossman*, 120 F.3d at 1118. Additionally, the Celestial Defendants maintain they cannot be held liable for statements purportedly made by third-party analysts because they were not untrue or misleading and there is no allegation that the Celestial Defendants had any knowledge of or involvement in the statements for which Celestial cannot be held liable. The complaint alleges Defendants made false representations to analysts as part of their fraudulent scheme. (Compl. ¶ 24.) The Tenth Circuit referenced the analysts wires and reports and noted that the complaint adequately charges Defendants with responsibility for them. *Schwartz*, 124 F.3d at 1252–53. Dismissal on this ground is therefore inappropriate.