QUEEN UNO LTD. PARTNERSHIP, **Douglas Giedt, and Silview Investments Limited, on behalf of themselves and on behalf of all others, Plaintiffs,**

v.

**COEUR D'ALENE MINES CORPORATION, Dennis E. Wheeler and James A. Sabala, Defendants.**

No. 97–WY–1431–CB.

United States District Court, D. Colorado.

Dec. 15, 1998.

Robert J. Dyer III, Dyer, Donnally & Lilley, Denver, CO, Alan Schulman, Randi D. Bandman, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, San Diego, CA, for plaintiffs.

Alan Salpeter, Mayer Brown & Platt, Chicago, IL, Lişa Hogan, Jeanine M. Anderson, Brownstein Hyatt Farber & Strickland, P.C., Denver, CO, for defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

BRIMMER, District Judge.

Plaintiffs have moved for class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Coeur d'Alene Mines Corporation's (the "Company") common stock, MARCs or 6 3/8% convertible debentures between January 9, 1995, and July 11, 1996. This proposed Plaintiffs' class would exclude Defendants, members of their families and any

entity in which any Defendant has an interest. For the reasons that follow, **IT IS ORDERED** that Plaintiffs' motion for class certification is **GRANTED**.

### Background

The Company is an Idaho corporation that explores, develops and operates silver and gold mining properties in the United States, Chile, and New Zealand. Between 1991 and 1994, the Company consistently lost money due to its substantial interest payments associated with its debt. Plaintiffs allege that in a desperate attempt to raise operating capital to bolster its operating results, Defendants engaged in an unlawful and fraudulent scheme to inflate the Company's stock price, reduce its operating losses, and create the false impression that the Company had returned to profitability in 1995. In doing so, Plaintiffs contend that Defendants violated Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b–5.

Plaintiffs allege that to carry out their scheme, Defendants began publicly disseminating false and misleading statements regarding the Company's current and future prospects. These statements caused the Company's stock price to rise. This rise in the stock price allegedly enabled the Defendants to rearrange their capital structure and reduce their interest payments substantially, strengthen its balance sheet, pursue acquisitions of other companies, sell $150 million of the Company's securities to the public, and collect large bonus payments at year-end 1994 and 1995.

The acquisition of the Golden Cross mine from Cypress Amax Minerals Company was central to Defendant's alleged scheme. On April 30, 1993, Defendants purchased the mine for more than $50 million. This mine is in New Zealand. Throughout the proposed class period, Defendants touted the success of the mine as a key factor in the Company's expected return to profitability. But at the same time, Defendants allegedly knew of significant structural problems that threatened the continued operation of the mine. The Company never revealed this material adverse information.

Plaintiffs also allege that Defendants made false statements about conditions and prospects of the Company's Fachinal mine in Chile. These statements included: (1) that the mine would be completed on time and under budget in October 1995; (2) that the mine would begin commercial production in late 1995; and (3) that the mine would produce 41,000 to 45,000 ounces of gold in 1996. However, at the time the Company allegedly made these statements, the Company knew that they were having trouble in accomplishing these tasks. In particular, they were well aware that the mine would go into production much later than announced, that it would not produce the gold expected in the near future, and that the mine would not be profitable.

These statements, along with others, allegedly inflated the stock price to $25 3/4 per share, an all time high. But on July 10, 1996, the Defendants disclosed the nature of the problems associated with the Golden Cross Mine and wrote off its entire value, over $50 million. The Company also admitted that the Fachinal mine would never reach commercial production in 1996 along with other substantial problems. Upon these statements, the stock price plummeted to $15 1/2 per share.

### Analysis

In general, class actions are the favored method of litigating securities fraud actions in which numerous plaintiffs are involved. *See Schwartz v. Celestial Seasonings, Inc.,* 178 F.R.D. 545, 550 (D.Colo.1998) (citation omitted). Indeed, certification is not irreversible and the Court may alter or amend it before a decision on the merits. *See id.* "This power to change the class certification decision has encouraged many courts to be quite liberal in certifying a class when that decision is made at an early stage, noting that the action always can be decertified or the class description altered if later events suggest it is appropriate to do so." *Id.* (citations omitted).

Under Rule 23(a) of the Federal Rules of Civil Procedure, the plaintiffs must satisfy four prerequisites to certify a class. First, the class must be so numerous that joinder of all members is impracticable ("Nu-

merosity"). Second, there must be questions of law or fact common to the class ("Commonality"). Third, the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("Typicality"). And fourth, the representative parties must fairly and adequately protect the interests of the class ("Adequate Representation").

Second, Plaintiffs must establish that the case fits within one of the three subcategories of Rule 23(b). In this case, Plaintiffs have moved to certify the class under Rule 23(b)(3) which requires a showing that questions of law and fact common to the class predominate over any questions affecting only individual members, and that the class action device is superior to other methods in which to adjudicate the case. *See* F.R.C.P. 23(b) (1998).

## I. 23(a) ANALYSIS

### A. Numerosity

■ Courts generally assume that the numerosity requirement is met in cases involving nationally traded securities. *See In re Intelcom Group, Inc.,* 169 F.R.D. 142, 148 (D.Colo.1996). The Company's stock is traded on the New York and Pacific Stock Exchanges. During the class period, the Company had millions of shares of stock outstanding. This stock was owned by hundreds, if not thousands, of shareholders. The shareholders are so geographically dispersed that joinder is impracticable. The numerosity requirement is thus easily satisfied here.

### B. Commonality

■ Commonality is also satisfied here. Indeed, the defendants have not disputed that the plaintiffs have satisfied this element. The commonality requirement does not demand that all questions of law or fact at issue be common, it only requires that significant common issues of law or fact exist. *See Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 385 (D.Colo.1993) (citation omitted).

Here the plaintiffs have set out a common course of conduct by Defendants that affects the entire class. The claims each arise out of the same operative facts and are based on the same legal theories. Common questions include: (1) Whether the federal securities laws were violated, (2) whether Defendants omitted or misrepresented material facts, (3) whether Defendants' statements omitted material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading; (4) whether Defendants knew or recklessly disregarded that their statements were false and misleading; and (5) whether the price of the Company's securities was artificially inflated during the class period. There is no doubt that the commonality requirement is met here.

### C. Typicality

■ "So long as there is a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied." *Schwartz,* 178 F.R.D. at 551. The positions of the named class members need not be identical. *See id.* Accordingly, the proposed class can meet this requirement despite the fact varying fact patterns may support the claims and defenses of various class members, or despite that there is disparity among the representative parties and other members of the class. *See id.*

#### 1. Queen Uno

■ Defendants argue that Queen Uno is not typical. First, Defendants argue that Queen Uno does not have the legal capacity to pursue remedies in this case. The partners dissolved Queen Uno in March 1995. As an Illinois limited partnership, Queen Uno has the capacity to litigate claims while in the "winding up" phase, but once that process is complete, the partnership is terminated and is no longer a legal entity that has the capacity to litigate. *See Englestein v.. Mackie,* 35 Ill.App.2d 276, 182 N.E.2d 351, 357 (Ill.App. 1962).

■ Plaintiffs counter that a partner has the authority to sue for a dissolved partnership. Thus, Queen Uno is not subject to unique defense. *See Frazier v. Dettman,* 212

Ill.App.3d 139, 155 Ill.Dec. 771, 569 N.E.2d 1382, 1385 (Ill.App.1991). This assertion is true, but only true while the partnership is still winding up. *See id.* This Court's analysis of the relevant law reveals that the proper inquiry is whether the partnership is still in the "winding up" process. Defendants argue that the only matter keeping Queen Uno even arguably in the winding up phase is this litigation. Queen Uno's assets have been distributed and other partnership affairs have been otherwise concluded.

■ However, as *Frazier* contends, the winding up process includes bringing a legal action. *See id.* 569 N.E.2d at 1385. But the significant time disparity from when the partnership appeared to wind up, and the present ligation raise serious issues as to Queen Uno's capacity.

■ Yet even if this were not enough to disqualify Queen Uno, the defendants also contend that Queen Uno is subject to a unique defense because it was a "market maker" regarding the Company's stock. Ernie Naiditsch, Queen Uno's general partner, has testified that Queen Uno's business was trading stock and options on the Chicago Board of Options Exchange ("CBOE"). It appears that Queen Uno's limited partner, Licia Leslie, was a trader on the CBOE who had a "post" on the exchange where she traded the Company's options. Defendants contend that Queen Uno purchased the Company's shares because of its position on the CBOE—that as a market maker it had an obligation to do so. Thus, the defendants contend that this fact subjects Queen Uno to the unique defense that it was not relying on the integrity of the market to buy Coeur stock in deciding whether and how much of the Company's stock to buy. In making this argument, Defendants rely heavily on *McNichols v. Loeb Rhoades & Co., Inc.,* 97 F.R.D. 331, 344–46.

In *McNichols,* the court concluded that a proposed representative plaintiff was not "typical" because he was a market maker because he was subject to the unique defense of market maker and he was subject to unique causation problems involving reliance and materiality resulting from his role as market maker. *See id.* The court did note,

however, as Plaintiffs correctly point out in their brief, that the *McNichols* court did not hold that a market maker can never adequately represent the plaintiffs of a class composed of investors. *See id.* at 346 n. 38. The plaintiffs contend that Queen Uno was a market maker for options, not Coeur stock, because it was a market maker on the CBOE. They contend that it purchased stock over the counter just like everybody else.

In their reply brief, Plaintiffs cite *Chill v. Green Tree Fin. Corp,* 181 F.R.D. 398, 404, 410 (D.Minn.1998). *Chill* distinguished *McNichols,* relying primarily on the fact that there was no evidence either way that revealed the market maker's strategy for buying the stock. However, unlike that case, here there is deposition testimony by Queen Uno's general partner that it bought the Company's stock because it was their obligation to do so as a market maker.

Given this evidence, it is likely that Queen Uno will be subject to unique defenses. In the interests of judicial economy, it is best to certify this class correctly now. It will save the attorneys, the Court, and ultimately the parties, numerous hours of time and money if Queen Uno is disqualified now rather than later.

Accordingly, Queen Uno is now disqualified as class representative.

### 2. Douglas Giedt

Defendants first argue that Mr. Giedt does not have the capacity or financial wherewithal to pay costs associated with this litigation. It is well established that a lawyer may forego reimbursement of some or all of the expenses of litigation if the client is unable to pay, but the Court doubts that a client would pay for a nationwide securities fraud class action. This argument is without merit and is summarily dismissed.

■ Likewise, given Mr. Giedt's testimony at the class certification hearing, this Court does not think the fact Mr. Giedt did not list a sale of 1,000 shares of stock in his certification has damaged Mr. Giedt's credibility. It is apparent from his testimony that

this was an honest mistake. The Court likewise rejects this argument.

■ Defendants' main argument is that Mr. Giedt was not damaged and is therefore atypical. It appears that during the class period, Mr. Giedt purchased 1000 shares of stock at $21.375 per share. During the class period, he also sold 1000 shares of stock at $24.25 per share. Thus, Mr. Giedt made, and did not lose, money during the class period. Thus, Defendants contend he is subject to the unique defense that he has no damages and thus has no standing to sue. Defendants also contend that he conflicts with class members who did not sell during the period, but who bought in February 1996, when the stock was at its high point.

■ However, as Plaintiffs correctly point out, in a Rule 10b–5 action, damages are determined by the out of pocket rule. The out of pocket rule dictates that damages are determined between the stock purchase price and the true value of the stock at the date of purchase. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436–37 (9th Cir.1987). Thus, Mr. Giedt only needs to prove that Defendants artificially inflated the price he paid for the stock at the time he bought the stock through their material misrepresentations. This means that Mr. Giedt was damaged.

In sum, Mr. Giedt satisfies the typicality requirements for class certification. The fact that he sold stock during the class period does not pose an irreconcilable conflict with the other class members. Further, the fact that he has different damages than some class members is not fatal to typicality—Mr. Giedt has standing. *See Schwartz*, 178 F.R.D. at 551. This Court is confident that there is a nexus between Mr. Giedt's claims and common questions of law and fact common to the class; thus, the Court **FINDS** that typicality is met regarding Mr. Giedt.

### 3. Silview Investments

■ Defendants claim that Silview Investments is atypical because it only purchased convertible 6 3/8% debentures and did not purchase any stock. The great weight of authority suggests that this proposition is not true. Many courts have certified class actions in which the class representatives did not have the same type of investment vehicle as the rest of the class. *See Tedesco v. Mishkin*, 689 F.Supp. 1327 (S.D.N.Y.1988) (investors in eight different investment vehicles were certified to represent class of investors in fifteen different investment vehicles created or controlled by the defendants); *Longden v. Sunderman*, 123 F.R.D. 547, 552–53 (N.D.Tex.1988) (investors in seven partnerships certified to represent class of investors in 121 partnerships); *see also Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56 (S.D.N.Y.1993) (investors in three limited partnerships certified to represent the class of all purchasers of five partnerships).

■ Defendants' cited cases also suggest Silview would be a proper class representative in this instance. As Defendants correctly point out, in *Simon v. Westinghouse*, the court cited the potential divergence of interest between the purchasers of common stock and purchasers of debt securities as a reason for refusing to certify a large all-inclusive class action like that proposed here. *See* 73 F.R.D. 480, 484 (E.D.Pa.1977). The question necessarily is, why are the interests divergent and why should this matter in prosecuting a securities fraud case? The answer must be that different factors push an investor to buy debt versus equity securities, and that "[t]o the extent the claims differ, purchasers of common stock will have little or no interest in presenting evidence to support the claims of purchasers of other securities." *Id.* In a securities class action such as this, it is important that all aspects of the class action be represented fully and adequately so that the judgment will bind them. *See id.*

But this case, unlike *Simon*, has representatives from all facets of the proposed class. This is what cases like *Simon* were concerned with. The court in *Simon* obviously recognized this when it stated: Unlike the case relied upon by Plaintiffs, "there are no named plaintiffs who purchased debentures or preferred stock and so are able to represent such purchasers and insure that their possibly different interests are considered." *Id.* The court in *Simon* refused to certify the

class to include all facets of securities because there was no named plaintiff to represent each type of security. *See id.*

That is not so in our instance. Mr. Geidt has purchased stock during the relevant time frame and can adequately represent stock purchasers. Likewise, Silview, as a purchaser of debentures, can adequately represent class members who purchased debt securities. Together they can ensure that evidence is presented to support all interests. Accordingly, the reasons for denying Silview on typicality reasons are simply not present as they were in *Simon* —all classes of securities will be represented in this class action.[1]

Finally, many courts have recognized that debt and equity purchasers may be certified in one class. *See, e.g., McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 422 (7th Cir.1977). This Court finds the positions of the two parts of this class ultimately are reconcilable and not atypical.

■■■ Defendants have also argued that to the extent Silview can represent a class of equity purchasers, it is atypical because it is subject to the unique defense that it did not rely on the integrity of the market price in purchasing the debentures. Defendants can allegedly defend on the ground that they relied, not on the market price of the Company's stock, but instead on the interest rate the debentures carried and merely saw the conversion factor as merely hope of additional gain. This Court's analysis has already addressed some of Defendants' arguments why Silview can represent both debt and equity purchasers. To the extent it does not, Plaintiffs' reasoning persuades the Court: that Silview did in fact rely on the integrity of the market in purchasing the Company's debentures because these debentures are traded on the New York Stock Exchange, and the interest rate of debentures, like common stock, reflects the financial condition of the company. (Pls.' Reply at 12.) Finally,

courts have presumed reliance on the integrity of the market place to exist, and rebuttal of individual class member's reliance will not defeat class certification in any event. *See Muth v. Dechert, Price & Rhoads*, 70 F.R.D. 602, 607 (E.D.Pa.1976); 4 Herbert b. Newberg and Alba Conte, *Newberg on Class Actions*, 22–230 (3d ed.1992).

### D. Adequate Representation

■■■ There are two aspects of adequate representation, that of the named class representative and that of class counsel. *See Cook*, 151 F.R.D. at 386. Adequacy of representation will be found where the named plaintiffs have no antagonistic or conflicting interests with those of the class and where class counsel is qualified, experienced and able to conduct the proposed litigation. *See id.* As Defendants correctly point out, the requirements of typicality and adequacy of representation are interrelated. However, adequacy of representation is unique in that it has a "constitutional dimension, since it would violate due process to bind a class member to a ruling against inadequate class representatives." *See In re Tech. Corp.*, 113 F.R.D. at 117.

#### 1. Douglas Giedt

The arguments posed by Defendants were combined to address both typicality and adequacy of representation. This Court has addressed Defendants concerns and has found that Mr. Giedt is typical. These arguments apply equally to adequacy of representation. In the absence of further evidence, this Court presumes that this factor is satisfied. *See Schwartz*, 178 F.R.D. at 552.

#### 2. Silview Investments

During the class period, Silview made three purchases of the Company's 6 3/8% convertible debentures, due in 2004. Defendants argue that Silview did not retain Milberg Weiss or Dyer Donnelly and that in fact

---

1. In addition, given this Court's reasoning, it is not necessary to create sub-classes at this time. If the parties feel that the class should be sub-classed, they may submit arguments on that issue at a later date. However, this Court's analysis of the relevant law has left it inclined to deny such a motion at this time because both debt and equity purchasers of securities are represented by named plaintiffs.

Finally, the Court is aware that part of this argument may apply to adequate representation as well. To the extent it does, the parties should consider it satisfying adequate representation in this regard.

he was solicited to be a class representative. In Plaintiffs' reply, however, they attached a declaration of Shoel Silver, Vice President of Silview, in which he testified that he retained Harvey Spiegel to represent him. He retained Mr. Spiegel after he was contacted by his broker about the fact that a lawsuit had been instituted against the Company. Mr. Silver has stated that he was never solicited and that he made his own decision to serve as a representative in the lawsuit. This Court is persuaded that Mr. Silver in fact was not solicited to be a class representative. Defendants' argument is thus rejected. In all other regards, this Court finds that Silvew Investments is an adequate representative.

### 3. Class Counsel

The Court **FINDS** that class counsel are highly experienced in complex class litigation and have the ability and willingness to vigorously prosecute this action. Class counsel thus meet the adequate representation requirement.

### II. 23(b)(3) ANALYSIS

When addressing this analysis, the Court's inquiry should be directed primarily toward liability. *See Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y.1987). As the court's commonality analysis makes clear, there are numerous common issues of law and fact in this case. In fact, it seems that the liability issues are identical to all members of the class. The common issues thus predominate over the individual issues.

Likewise, the class action device is a superior vehicle for adjudicating this case. Securities fraud actions of this type involve geographically disbursed plaintiffs and involve such costs that if this litigation was not brought via class action, the costs of litigation would likely outweigh any benefit obtained. Through this device, the Court can manage the issues effectively and efficiently and ensure a speedy resolution to all issues involved.

### Conclusion

For the foregoing reasons, it is **ORDERED** that this **PLAINTIFFS CLASS IS CERTIFIED UNDER RULE** 23(b)(3) of the Federal Rules of Civil Procedure. The Class shall be **DEFINED** as on behalf of all persons who purchased or otherwise acquired Coeur d'Alene Mines Corporation's common stock, MARCs or 6 3/8% convertible debentures between January 9, 1995, and July 11, 1996, excluding Defendants, members of their families and any entity in which any defendant has an interest in the class. Finally, it is **ORDERED** that Douglas Giedt and Silview Investments Limited shall be appointed class representatives of this class, and Queen Uno is **DISQUALIFIED** as class representative.