**CHEROKEE NATION OF OKLAHOMA; and Shoshone–Paiute Tribes of the Duck Valley Reservation, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**UNITED STATES of America, Donna E. Shalala, Secretary of the United States Department of Health and Human Services, and Michael H. Trujillo, Director of the Indian Health Service, United States Department of Health and Human Services, Defendants.**

No. CIV–99–92–S.

United States District Court,
E.D. Oklahoma.

Feb. 9, 2001.

358

Weldon W. Stout, Jr., Bart Fite, Muskogee, OK, Lloyd Benton Miller, Devin R.

Odell, Anchorage, AK, William R. Perry, Anne D. Noto, James E. Glaze, Sonosky, Chambers, Sachse & Endreson, Washington, DC, for Cherokee Nation of Oklahoma, Shoshone–Paiute Tribes of the Duck Valley Reservation, on behalf of themselves and all others similarly situated, plaintiffs.

Bruce Green, Linda A. Epperley, U.S. Attorney, Muskogee, OK, Lisa Olson, Sheila M. Lieber, David W. Ogden, Civil Division, Washington, DC, for Donna Shalala, Secretary of Health and Human Services, Michael H. Trujillo, Director of the Indian Health Service, United States Department of Health and Human Services, defendants.

## ORDER

SEAY, District Judge.

Before the court for its consideration is the plaintiffs Cherokee Nation and the Shoshone–Paiute Tribes' motion for class certification and for approval of class notice. The court denies the motion for class certification for the following reasons.

## I. Findings of Fact

1. The named plaintiffs are two Indian tribes that operate various Indian Health Services programs pursuant to contracts entered into under the Indian Self–Determination Act. A self-determination contract is a contract between the federal government and a tribe, under which a tribe takes over the administration of a federal government program, such as an Indian Health Services hospital or clinic. (First Amended Complaint filed May 17, 1999, Answer filed June 7, 1999, and Transcript from Hearing on Class Certification held November 1, 2000, page 37 lines 6–11).

2. When a tribe enters into a contract to operate an Indian Health Services hospital, clinic or other health programs, contract support costs are generally paid to the tribe. Contract support costs represent the necessary overhead costs that must be incurred by a tribal contractor to administer the hospital, clinic or other health programs and to meet government requirements imposed by the Indian Health Services in the contract. (Transcript from Hearing on Class Certification held November 1, 2000, page 37 lines 12–19).

3. The Indian Self–Determination Act does not prescribe or specify any particular amount that may be considered "full" funding of contract support costs or "full" contract support costs needs for any particular tribe or tribal organization. (Transcript from Hearing on Class Certification held November 1, 2000, page 181 lines 14–22).

4. There is no standard language on contract support costs in Indian Health Services contracts, compacts and annual funding agreements. Each tribe negotiates its contract separately. (Transcript from Hearing on Class Certification held November 1, 2000, page 34 lines 2–25 and page 35 lines 1–12).

5. On an annual basis the Indian Health Services calculates the "full" contract support cost need of each tribal contractor using a variety of information. The process by which Indian Health Services calculates "full" tribal contract support cost needs is typically controlled by various Office of Management and Budget and Indian Health Services government circulars. The Indian Health Services issues a shortfall report which shows the deficiency in contract support costs. In this shortfall report, the Indian Health Services summarizes how much Indian Health Services has determined as each tribe's requirement to meet its "full" contract support cost needs in the prior year, how much Indian Health Services paid against the need, and the resulting shortfall, if any. (Transcript from Hearing on Class Certification held November 1, 2000, page 37 lines 20–25, page 38 lines 1–20, page 40 lines 18–25, page 41 line 1, page 156 lines 24–25, page 157 lines 1–11 and Plaintiffs' Exhibit "5", "8" & "36–39").

6. 329 tribes situated in 35 states currently operate Indian Self–Determination Act contracts for the administration of various Indian Health Services hospitals, clinics and other federal health care programs. Of these tribes, at least 296 have experienced shortfalls in the payment of their contract support cost needs as calculated by Indian Health Services. (Transcript from Hearing on Class Certification held November 1,

2000, page 89 lines 7–25, page 90 lines 17–20 and page 90 line 25, page 91 lines 1–17, page 95 lines 19–23, page 96 lines 18–23 and Plaintiffs' Exhibit "28").

7. The attorneys for the plaintiffs are highly experienced litigation attorneys and have experience representing tribes in Indian Self–Determination Act matters, specifically contract support costs. (Plaintiff' Exhibit "33").

## II. Analysis of Class Certification Pursuant to Rule 23

### a. Legal Standards Applicable to Class Certification

Federal Rule of Civil Procedure 23 states: (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■■■ This court may not certify a class action unless it is satisfied the prerequisites of Rule 23(a) have been met. Once the court is satisfied that numerosity, commonality, typicality and adequate representation have been met, it must then be satisfied the action falls within one of the three categories of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613–614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). The class can only be certified after a rigorous analysis of Rule 23(a). *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). A party seeking class action certification must demonstrate, under a strict burden of proof, that all of the requirements of Rule 23(a) are clearly met. *Rex v. Owens ex rel. State of Oklahoma*, 585 F.2d 432, 435 (10th Cir.1978) and *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988). In conducting the certification analysis, the court may not consider the merits of the claim. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Even if the court finds that all the requirements of Rule 23 are satisfied, the decision of whether to certify a class is firmly committed to the trial court's discretion. *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982).

### b. Identifying the Requested Class

■■■ In order for this court to certify the case at bar as a class action, the court must be satisfied that there is the existence of an identifiable class. *Colorado Cross–Disability Coalition v. Taco Bell Corporation*, 184 F.R.D. 354, 356 (D.Colo.1999). The class does not have to be so ascertainable that every potential member can be identified at the commencement of the action. *Joseph v. General Motors Corporation*, 109 F.R.D. 635, 639 (D.Colo.1986). However, a class must be sufficiently defined so that it is "administratively feasible for the court to determine whether a particular individual is a member." *Id.* at 639.

■■■ In their opening brief plaintiffs sought certification for the following class:

All Indian tribes and tribal organizations operating IHS programs under contracts, compacts, or annual funding agreements authorized by the Indian Self–Determination Act, as amended, 25 U.S.C. Sec. 450 et seq., that did not receive full contract support costs funding at any time from 1988 to the present.

Subsequently on October 24, 2000, plaintiffs filed a Notice of Filing Revised Proposed Notice of Class Action. In that Notice, the plaintiffs defined their class as:

All Indian tribes and tribal organizations operating Indian Health Service programs under contracts, compacts or annual funding agreements authorized by the Indian Self–Determination Act, 25 U.S.C. Sec. 450 et seq., that were not fully paid their contract support cost needs, as determined by IHS, at any time between 1988 and the present.

Defendant argues that under plaintiffs' definition the court could not determine who was a member of the class without determin-

ing who had been denied "full" contract support costs. Defendant argues the "full" amount of contract support costs to which plaintiffs are entitled, in light of the provisions in their respective agreements with Indian Health Services, the Indian Self–Determination Act, and Section 314, is the legal question at the very heart of this case. Thus, the court would be required to resolve the merits of the case in order to determine members of the class. This is strictly prohibited by *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974).

Plaintiffs argue the Indian Health Services' own documents identify the class and show that it is readily ascertainable. The Indian Health Services made a report to Congress and to all interested tribes of the "full" amounts tribal contractors were entitled to under the Indian Self–Determination Act for certain years. The Indian Health Services uses a specific formula to calculate the amounts of the contract support costs. It expressed the total contract support cost need or requirement in terms of it being 100% funded. The same list itemized each and every dollar the Indian Health Services actually paid against the contract support costs and then calculated by the tribe and in the aggregate the resulting shortfall. Plaintiffs' exhibits reveal the Indian Health Services has identified each and every tribal contractor in the United States that has experienced a shortfall. Plaintiffs have identified 296 tribes out of a potential 329 tribes who were underpaid or experienced a shortfall as a result of defendant's failure to pay.

It does not appear to this court that a decision on the merits would have to be made to decide which tribes could be a members of the class in question. The court finds the evidence presented clearly identifies the class is comprised of tribes that experienced shortfalls in funding for the years designated. The evidence clearly shows that according to the Indian Health Services, 296 tribes have experienced a shortfall with respect to contract support costs. The issue of whether the shortfalls result in liability of the defendant can be determined at the liability phase. Further, the court could at a later date di-

vide the class into subclasses with respect to a particular issue if necessary. Federal Rule of Procedure 23(c)(4). As a result, this court finds the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular tribe is a member since the government has identified the tribes that experienced shortfalls according to the Indian Health Services calculations. *Joseph* at 638.

### c. The Four Prerequisites of Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is not necessarily impossible, but at least impracticable. *Ditty v. Check Rite, Ltd.,* 182 F.R.D. 639, 641 (D.Utah 1998). A number of factors are relevant in determining whether joinder is impracticable, including class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the financial resources of class members, and the ability of class members to institute individual lawsuits. *Taco Bell* at 357.

#### i. Class Size

In determining class size, the exact number of potential members need not be shown. *Joseph* at 639. Rather, the court may make "common sense assumptions" to support a finding that joinder would be impracticable. *Civic Association of Deaf of New York City, Inc. v. Giuliani,* 915 F.Supp. 622, 632 (S.D.N.Y.1996).

Plaintiffs argue that class size is easily ascertainable. In September of 1999, the Indian Health Services prepared a report titled "Indian Health Service, Contract Support Cost Data". In that report the Indian Health Services list 329 tribes or tribal organizations which comprise the total number of tribes and tribal organizations contracting or compacting with Indian Health Services. Further, the Indian Health Services has issued a report which shows at least 296 of the 329 tribes experienced a shortfall due to defendant's failure to pay. Thus, plaintiffs argue numerosity is easily met.

Defendant argues this is insufficient to identify potential class members because it

fails to identify how many of these allegedly contracting or compacting tribes did not receive "full" contract support costs funding at any time from 1988 to the present so that the tribes would fit within their class definition. Defendant again argues a class cannot be ascertained without resolving the legal arguments of this case. The court has previously ruled that a decision on the merits is not necessary to identify potential class members.

■ Defendant also argues the plaintiffs' attempt to identify potential class members and thus determine class size is defective for four reasons. First, the plaintiffs have offered no indication of how many tribes expressly agreed to be placed on the Indian Health Services' priority list or queue, for the payment of new contracts support costs. Presumably, these tribes are at odds with plaintiffs in having consented to Indian Health Services' policy of distributing its' limited funds on a first-come-first-served basis. Second, defendants argue plaintiffs fail to exclude putative class members whose claims in this case are barred by the six-year general statute of limitations. Third, defendant argues plaintiffs fail to exclude proposed class members claiming contract support payments for years other than 1996 and 1997. Finally, defendants argue plaintiffs fail to exclude tribes that are litigating or have litigated cases in other judicial or administrative forums. Defendant also argues that even if plaintiffs could identify an ascertainable number of proposed class members they have failed to demonstrate the impracticability of joinder.

■ While the court agrees the plaintiffs' definition of a class does not exclude these categories of tribes, it does not find it defective in determining numerosity. These tribes will have the opportunity to opt out of the class action if they deem it necessary. Further, the named plaintiffs ability to represent the class is impaired only when the named representatives' claim is subject to a unique defense that is inapplicable to other members. *Hagen v. Winnemucca,* 108 F.R.D. 61, 65 (D.Nev.1985). The government has argued that the proposed class may have these unique defenses but has not asserted that the representative plaintiffs would have a defense unique from the proposed class members. Further, as to the statute of limitations defense, such a "contention cannot serve to bar a class certification in that an inquiry into a claimed affirmative defense impermissibly allows an issue going to the merits of the litigation to intrude upon the class certification analysis required by Rule 23." *Cook v. Rockwell International Corporation,* 151 F.R.D. 378, 386 (D.Colo. 1993). As to tribes claiming contract support costs for years other than 1996 and 1997, these tribes still experienced a shortfall. Thus, it appears to this court they would still be a proper member of the class. Their claims do not have to be identical to the class representatives.

### ii. Geographic Diversity

It is undisputed the potential class covers tribes all over the United States. They involve tribes in 35 states. Defendant argues geographic diversity is insufficient to defeat joinder because it cannot be ascertained where the purported class members reside due to the vagueness and imprecision of the proposed class. However, the court agrees with plaintiffs that the geographic diversity of the potential class members makes joinder impractical, if not impossible. See *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir.1999) *cert. denied* 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000) (holding joinder not practicable where 100 to 150 class members were geographically dispersed.)

### iii. Ability to Identify Class Members

The court has previously determined that the class members are readily identifiable.

### iv. Difficulty for Class Members to Bring Individual Suits and Financial Resources of Class Members

No evidence was presented regarding the financial resources of proposed class members to bring individual lawsuits. Plaintiffs argued the alleged geographical dispersion would increase the financial burden on each class member. Defendant argues that since

the plaintiffs are requesting $125 million for the class in this lawsuit, it may be reasonable to presume that each of the purported members of the class have a sizeable claim and therefore a strong motivation for individual action. Since no evidence was presented on this issue, the court makes no findings.

The court has previously determined that the class is ascertainable and that there are at least 296 tribes that have experienced shortfalls due to defendant's failure to pay identified contract support costs. The court believes that is a sufficient number to make joinder impracticable. Accordingly, plaintiffs have met the burden of showing numerosity.

## II. Commonality

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class which predominates over questions peculiar to individual members of the class. Plaintiffs must establish that at least a single issue is common to the class. *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir.1999). However, not every issue must be common to the class so long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory. Taco Bell at 359.

■ Plaintiffs argue the common fact in this case is the governments' failure to pay the "full" amount of contract support costs due each contracting tribe in the country. Plaintiffs argue that this necessarily gives rise to the common legal issue: whether the Indian Self–Determination Act, and the Indian Health Services contracts that implement the Act, require the government to pay tribes the "full" contract support costs funding. Plaintiffs argue the government's policy applied to all tribes of refusing to pay shortfalls after allegedly running out of funds is the central focus of the litigation for each individual tribe and thus the commonality requirement is met. Plaintiffs argue the fact, that the amount of funding each tribe seeks may be different does not alter the common legal question they all share.

Defendant argues there is no commonality of law and facts because there is no set definition of "full" contract support costs.

The defendant argues a determination of whether a tribe received "full" contract support costs would require an examination of each contract with respect to each proposed · class member for every year in question. Defendant argues the tribal agreements with Indian Health Services with respect to contract support costs varies based on individual negotiations. Defendant argues the individualized nature of the claims of each plaintiff and the separate, discrete and unrelated determinations that will have to be made with respect to each allegation of an alleged shortfall illustrates the absence of common issues in this case.

Testimony was presented by plaintiffs' expert David Trigg Mather that the language of each of the contracts or annual funding agreements concerning contract support costs is not the same for every tribe. In fact, he testified there was not even standard language on contract support costs that appears in every agreement for every tribe. A review of the Shoshone Paiute Tribal Health Compact and the Compact of Self–Governance between the United States of America and the Cherokee Nation which were submitted as exhibits exemplifies this point. The court finds the issue of determining entitlement to "full" contract support costs for each tribes contract for each year in question is the primary focus of this litigation. To determine entitlement to "full" contract support costs, a detailed examination into the contracts of each plaintiff for each year with the defendant would be required. The court believes the individualized nature of the contracts in question would necessarily lead to individualized claims of each tribe in respect to shortfalls. This examination would develop into a set of mini-trials which would defeat the judicial efficiency which a class action is designed to promote. *Falcon* at 156, 102 S.Ct. 2364. Consequently, the court finds the questions peculiar to individual members of the class predominates over questions of law or fact that are common to the class members. Accordingly, the court finds plaintiffs have failed to meet their burden of commonality.

### III. Typicality

■ Rule 23(a) requires the claims asserted by the representative plaintiffs be typical of the claims of the class. According to the Tenth Circuit, "the typicality requirement is ordinarily not argued.... It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims for the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1189 (10th Cir.1975). The court must also examine and determine whether the representative's interest or claims are antagonistic or adverse to those of the class. *Edgington v. R.G. Dickinson and Company*, 139 F.R.D. 183, 189 (D.Kan.1991).

■ Plaintiffs argue that the representative tribes have the same legal claim as do the other class members. They, like the others, were denied their "full" contract support funding entitlement. Plaintiffs argue regardless of their specific status they were underpaid relative to the "full" amount specified in the Indian Self–Determination Act and their contracts. Plaintiffs further argue the government has the same defense to all claims "alleged lack of available appropriations for certain years and section 314 of the FY 1999 Appropriations Act." Thus, the representative tribes' claims, including the defenses to those claims are typical of the claims of the other class members.

Defendant argues the claims of these plaintiffs are not typical of the rest of the class, but rather antagonistic or adverse to those of the class. Defendant argues the Indian Health Services budget is finite. Since there is not enough money to pay all the tribes the entire amount of the contract support costs they are seeking, payment to one or more of the tribes will necessarily decrease the amount the other tribes will receive. In short, an increase in the contract support costs paid to plaintiffs will result in a decrease in funds already committed to the other tribes that plaintiffs purportedly represent.

Defendant also argues the interests of the named plaintiffs are antithetical to those of the putative class members who expressly consented to be placed on the Indian Health Services queue list and await their turn for "full" payment of new contract support costs. Defendant notes that unlike the plaintiffs in the case at bar, some of the tribes have not opposed the queue system and in fact have actually sued to enforce it.

Finally, the defendants argue that in light of the specific fact-based issues arising from each shortfall, the named plaintiffs will be likely to focus on the issues of importance to them instead of focusing on issues common to the class.

Plaintiffs replied, stating that defendant's argument that the plaintiffs' interests are inapposite to the class ignores the test for typicality which is: have the potential class members suffered the same grievance of which the representative plaintiff complains? Plaintiffs argue this test is clearly met in the case at bar. Plaintiffs also argue that this is not a suit to invade Indian Health Services finite appropriations, because if the plaintiffs prevail a damages award will follow. Plaintiffs seem to argue that a damage award will not be paid from the finite appropriations. As to the tribes on the queue list, plaintiffs argue they are still pursuing the same claims as the representative plaintiffs, they just have an additional theory upon which to rely. Further, plaintiffs argue that if the queue list is the preferable method for that tribe, they are allowed to opt out of the class.

The court finds there is more than a factual difference at issue here. Each tribes' contract is individual and specific to it. It was negotiated separately from the other tribes and consequently its provisions could possibly have a different meaning for "full" contract support costs. A tribes' entitlement to "full" contract support costs as it applies to each tribe is the question at the heart of this lawsuit. It appears there could be a variety of different legal and remedial theories for each tribe, dependent on its contractual terms. Thus, the court finds it difficult to conclude the plaintiffs' claims and the proposed class claims are based on the same legal or remedial theory.

Further, the court also finds the plaintiffs' interest are antagonistic to those of the

members of the proposed class. 25 U.S.C. Sec. 13 states "The Bureau of Indian Affairs, under the supervision of the Secretary of the Interior shall direct, supervise, and expend such moneys as Congress may from time to time appropriate…" Congress appropriates a limited amount of money to the Bureau of Indian affairs that ultimately is apportion to the Indian Health Services. It is undisputed the Indian Health Services has a finite budget. Even if the plaintiffs are only seeking damages as suggested, the money to pay these damages must come from the budget of the Indian Health Services. The only logical conclusion which can be reached is that as a result of one plaintiffs' claim less money for other tribes will be available. See also *Albertson's Inc. v. Amalgamated Sugar Company*, 503 F.2d 459, 463 (10th Cir.1974) (upholding trial court's decision that conflicts of interest existed among class members as concerns their competitive relationship with one another.)

Plaintiffs have argued that since their claims are for damages, if they prevail their damages could be paid from the Judgment Fund. However, the court finds that this does not rectify the antagonism of interest. 41 U.S.C. Sec. 612 states:

Payment of claims

(a) Judgments

Any judgment against the United States on a claim under this chapter shall be paid promptly in accordance with the procedures provided by section 1304 of Title 31.

(c) Reimbursement

Payments made pursuant to subsections (a) and (b) of this section shall be reimbursed to the fund provided by section 1304 of Title 31 by the agency who appropriations were used for the contract out of available funds or by obtaining additional appropriations for such purposes.

Thus, the Indian Health Services would still have to take money from their limited appropriations in order to refund the Judgement Fund. As a result, it would be still be taking funds away from the programs of other potential class member tribes.

It is clear that the named plaintiffs have financial incentive to pursue their own claims, but because of the nature of a limited amount of money available to pay these claims, the court fails to see how the named plaintiffs have any incentive to vigorously pursue the claims of the proposed class members. It seems to this court each tribe has a great interest in individual litigation to aggressively protect and defend their interest under their individual contracts. The court cannot be assured that the plaintiffs, as representative class members, will aggressively pursue the claims of all proposed class members because of their own possible financial interest. The court simply cannot see how the interests of the plaintiffs are not antagonistic to the proposed members of the class. Accordingly, the court finds plaintiffs failed to meet their burden of proof as to typicality.

## IV. Adequate Representation

The final requirement of Rule 23(a) is adequate representation. This requires an examination of the qualifications of the legal counsel who will represent the class as well as an examination to determine if the class representatives can adequately represent the claims of the class. The court finds there is no question that the legal counsel currently representing plaintiffs are qualified to lead the class action on behalf of the plaintiffs and other class members.

Next, the court must examine whether the Cherokee Nation and the Shoshone–Paiute Tribes of the Duck Valley Reservation have such common interests with the class members that they will vigorously prosecute the interests of the class. *Cook v. Rockwell International Corporation*, 151 F.R.D. 378, 386 (D.Colo.1993). The "adequacy" component has a "constitutional dimension, since it would violate due process to bind a class member to a ruling against inadequate class representatives." *Queen Uno Ltd. v. Coeur D'Alene Mines Corporation*, 183 F.R.D. 687, 694 (D.Colo.1998). However, to adequately represent the class, the named plaintiffs must not have antagonistic or conflicting interests with those of the class. *Ditty* at 642.

Plaintiffs have argued the named plaintiffs have no conflicting interest with other poten-

tial members of the class. Plaintiffs argue under their legal theory, each tribe is entitled to its "full" amount of contract support costs under the Indian Self–Determination Act itself, as well as its self-determination contract with the government. Further, the plaintiffs argue their claims are sufficiently large to assure aggressive advocacy on behalf of the class. Thus, plaintiffs argue they have no conflicts of interest with other tribes in the potential class.

Defendant again argues because of the finite amount of money in the Indian Health Services appropriations the named plaintiffs interests may be antagonistic to the interests of the remainder of the class. Further, the defendant argues that some tribes may want to enforce the provisions of the queue list. If plaintiffs claims prevail, the queue list would be abolished.

As the court noted earlier, it finds the named plaintiffs' interests are inapposite to potential members of the class. The court simply fails to see how the named plaintiffs can vigorously pursue and protect the claims of potential class members when it could be to their financial detriment. It seems clear to the court that the named plaintiffs' interests are antagonistic to the claims of the remainder of the class. Accordingly, the court finds the plaintiffs fail to meet their burden of proof in regard to the issue that they are adequate representatives for potential class members.

### Conclusion

This court finds that the requirements of commonality, typicality and adequate representation have not been met. As a result, this court finds the requirements of Rule 23(a) have not been met. Accordingly, in its discretion, the court finds the class will not be certified.[1]

---

1. Plaintiffs have argued the *Ramah Navajo Chapter v. Lujan,* 112 F.3d 1455 (10th Cir.1997) provides legal precedent for class certification of the case at bar. However, the court disagrees. In the *Ramah* case, the United States did not oppose class certification on any of the grounds set forth in Rule 23. The United States only opposed class certification on the grounds that the purported class had failed to exhaust its class administrative remedies. Thus, the court in *Ra-* *mah,* never had the opportunity to evaluate the proposed motion for class certification pursuant to Rule 23(a) qualifications. There is no analysis by the *Ramah* court as to the requirements of Rule 23(a) being met. In this case, the United States has opposed the class certification on Rule 23 grounds. Accordingly, the court finds the decision in *Ramah* of little assistance in the case at bar.