# In re SUMMIT MEDICAL SYSTEMS, INC., SECURITIES LITIGATION.

## No. 97–CV–558.

United States District Court,
D. Minnesota.

June 29, 1998.

Stanley M. Grossman, Patrick V. Dahlstrom, Pomerantz Haudek Block & Grossman, New York, NY, Peter G.A. Safirstein, Samuel D. Heins, Stacey L. Mills, Heins Mills & Olson, Minneapolis, MN, Glen DeValerio, Michael G. Lange, Berman DeValerio & Pease, Boston, MA, Richard J. Vita, Vita Law Office, Boston, MA, for Jong E. Lee.

Peter Scott Hendrixson, Peter W. Carter, Julie Gyurci Meaney, Dorsey & Whitney, Minneapolis, MN, for Summit Medical Systems, Inc.

John Alpiner Halpern, Halpern & Assoc., Minneapolis, MN, for Teachers' Retirement System of Louisiana.

Timothy Desmond Kelly, Wendy A. Snyder, Kelly & Berens, Minneapolis, MN, Stanley J. Parzen, Michele Odorizzi, Mayer Brown & Platt, Chicago, IL, for Ernst & Young LLP.

## ORDER

ROSENBAUM, District Judge.

Defendants seek an order dismissing plaintiffs' Amended Consolidated Class Action Complaint,[1] pursuant to Rules 9(b) and 12(b)(5) and (6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and 15 U.S.C. § 78u-4. The Court heard oral argument on December 12, 1997. Defendants' motion is granted as to Count III of the Complaint, and denied as to the other Counts.

### I. *Background*

Summit Medical Systems, Inc. ("Summit"), is a Minnesota corporation with its headquarters in Minneapolis. Summit provides "clinical outcomes" software and related support services for selected medical specialties in the healthcare business. The putative class plaintiffs purchased Summit stock from August 4, 1995, to March 3, 1997. The second plaintiff is a union retirement fund holding a substantial number of Summit's shares. On August 25, 1997, the class plaintiffs filed an Amended and Consolidated Complaint alleging claims against Summit, its officers and directors, and Ernst & Young ("E & Y"), Summit's public accountant-independent auditor.

According to the Amended Complaint, on or about August 4, 1995, Summit made an initial public offering ("IPO") of 2.5 million shares of stock at $9 per share. The registration statement and prospectus contained an auditor's opinion rendered by E & Y. E & Y opined that the company's financial statements for the years ending December 31, 1993, and December 31, 1994, fairly represented Summit's consolidated financial position.

After the IPO, Summit's stock price rose rapidly. This rise occurred, notwithstanding the fact that Summit never showed a profit during the class period. At the end of 1996, Summit's stock began to drop, falling below the IPO price.

On March 3, 1997, Summit announced its discovery that it had improperly recognized certain revenue in 1996. It conducted an investigation into prior years, and concluded it would have to restate its financial results for 1994 and 1995. Plaintiffs claim this announcement caused Summit's stock price to plummet to $3 7/8 per share. On April 4, 1997, Summit filed its 1996 10-K, in which it restated its financial results for 1994, 1995, and for the first nine months of 1996. The restated revenues for this time period were $5.6 million less than originally reported—an 11% total cumulative net reduction of revenues.

After the March, 1997, announcement, a number of lawsuits were brought against Summit and its officers and directors, accusing them of securities fraud. In their Consolidated and Amended Class Action Complaint, plaintiffs claim E & Y and the other defendants violated Section 11 of the 1933 Act, 15 U.S.C. § 77k(a)(2). They further allege a fraud claim against the other defendants under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b).

Plaintiffs claim Summit's 1994 audited financial statements contained materially misstated and inflated revenue numbers. Plaintiffs also claim E & Y "knew or in the exercise of reasonable care would have known" the 1994 revenues were inflated. Notably, however, the Complaint does not assert that plaintiffs purchased stock which can be traced to the initial IPO shares issued to the registration statement. Instead, plaintiffs aver that their Section 11 claim is filed on behalf of "those members of the class who purchased shares registered by the August, 1995 registration statement and prospectus," making no allegation that their own purchases of Summit stock meet this description. E & Y claims plaintiffs lack standing to maintain a Section 11 action.

### II. *Discussion*

A court may only grant a Rule 12(b)(6) motion if the complaint fails to state a legally cognizable claim, and there is no set of facts that would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In reviewing a

---

**1.** There are two complaints before this Court— one filed by a putative class, and a second filed by the Teachers Retirement System of Louisiana.

complaint asserting fraud, a court must also consider Fed.R.Civ.P. 9(b), which requires "the circumstances constituting fraud ... [be] stated with particularity." To satisfy the particularity requirement, a plaintiff must plead "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Commercial Property Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (quotations omitted). Knowledge or scienter, by contrast, may be pleaded generally.

■ Count III of the Complaint, based on Section 11 of the Securities Act of 1933, asserts that since Summit's financial statements were misleading, E & Y and the other defendants are liable to any one "who purchased shares registered by the registration statement and prospectus."

Courts are split as to the definition of potential plaintiffs who may bring claims under Section 11. The Eighth Circuit Court of Appeals has not yet spoken on this matter, and the United States Supreme Court has only touched upon it tangentially. *See, Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995); *Arthur Schwartz v. Celestial Seasonings, Inc.*, No. Civ.A, 95–K–1045, 178 F.R.D. 545, 1998 WL 152958 (D.Colo. March 31, 1998) (holding that Section 11 extends to aftermarket purchasers); *In re Stratosphere Corp. Sec. Lit.*, CV–S–96–0708–PMP, 1998 WL 167259 (D.Nev. April 7, 1998) (discussing the application of Section 11 to aftermarket purchasers); *but see In re WRT Energy Sec. Lit.*, 96–CIV–3611, 1997 WL 576023 (S.D.N.Y. Sept.15, 1997) (holding that Section 11 should not apply to aftermarket purchasers, and finding that Section 11 provides limited protection only to those who purchased stock in the IPO).

■ In the absence of a definitive declaration by the Eighth Circuit, this Court adopts the position in *WRT*, and finds that Section 11 is applicable only to shareholders who acquired their stock in the IPO. Further, the Court determines that the *WRT* court correctly applied the Supreme Court's analysis in *Gustafson*. The plaintiffs are correct in pointing out that *Gustafson* is focused on Section 12, rather than Section 11, of the

Securities Act of 1933. But the Court finds it difficult to conceive that the United States Supreme Court has found a distinction in one section of a 60 year old regulatory act, and would find the same distinction inapplicable to the prior section. This view is bolstered by the Supreme Court's reference, in dicta, to the same interpretation being applied to both Sections 11 and 12, equally. *Gustafson*, 513 at 580.

Section 11 shares the same legislative history as Section 12(a)(2). That history provides that the 1933 Act only governs "new offerings," rather than ordinary distributions of securities. H.R.Rep. No. 85, 73d Cong., 1st Sess., 5 (1933); *see also Gustafson*, 513 U.S. at 580–81. Further, since a plaintiff in a Section 11 or 12 action can recover "without proof of either fraud or reliance," it is improbable that "Congress would have extended that liability to every private or secondary sale without a whisper or explanation." *Gustafson*, 513 U.S. at 580 Thus, the legislative history of the 1933 Act affirmatively demonstrates Congress's intent that the Act apply only to public offerings by an issuer. *Id.* (quoting H.R.Rep. No. 85, 73d Cong. 1st Sess. at 5 (1933)). For these reasons, this Court, like the court in *WRT*, finds the standing principles announced in *Gustafson* apply equally to Section 11 and 12 claims. *WRT* 1997 WL at *5.

Section 11, then, provides a cause of action to a purchaser of a security whose registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Indeed, even dissenting Justices Ginsburg and Thomas observed that Section 11 should apply only to initial distributions of securities. *Gustafson*, 513 U.S. at 600 n. 4. Because plaintiffs do not complain that they purchased their Summit shares in the IPO, their Section 11 claim is dismissed for lack of standing, and because the only claim against E & Y is premised on Section 11, E & Y's motion to dismiss is granted in its entirety.

If secondary market purchasers are to recover for an alleged material misstatement or omission made in connection with their share

purchases, they must do so under Section 10(b) and Rule 10b–5. None of the putative class plaintiffs allege a purchase in the IPO, and it is clear from the list of purchasers contained in the Complaint that only two plaintiffs, Casvan and McFarlin, could have purchased Summit stocks in the IPO. Thus, the Section 11 claims for the remaining plaintiffs are dismissed without prejudice, and with leave to replead, should they have standing in accord with this opinion.

 The Court, then, considers Summit's motion to dismiss for failure to plead with particularity, in accord with Fed.R.Civ.P. 9(b). To maintain a claim under Section 10(b) of the Exchange Act, plaintiffs must assert: (1) a misrepresentation or omission of a material fact; (2) in connection with the purchase or sale of a security; (3) intent to defraud or reckless conduct; (4) reliance; (5) causation; and (6) damages. *See Basic, Inc. v. Levinson,* 485 U.S. 224, 241–43, 108 S.Ct. 978, 988–90, 99 L.Ed.2d 194 (1988). In addition, since the claim is asserted to be based on fraud, the particularity provisions of Rule 9(b) must be met.

Plaintiffs must plead "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." The Court has reviewed the Complaint and finds that it satisfies Rule 9(b). Summit further claims the Complaint should be dismissed for failure to allege facts supporting a "strong inference" that it acted with the "requisite state of mind." The Court does not agree.

Congress, under the new Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, 15 U.S.C. § 78u–4 (the "PSLRA"), imposed a requirement for a Rule 10b claim that a plaintiff plead facts giving rise to a "strong inference of fraudulent intent." *In re Health Mgmt., Inc.,* 970 F.Supp. 192, 201 (E.D.N.Y.1997). The present Amended Complaint meets this standard. It alleges facts which, if proven, constitute both reckless and conscious behavior. It avers knowing violations and fraudulent business transactions, and names specific officers and directors who are claimed to have had knowledge of, or were directly involved in, violations. It specifies meeting dates at which the violations were discussed, and mentions names of defendants involved in those discussions. These comprise the specific facts needed to maintain a claim under both Fed. R.Civ.P. 9(b) and 12(b)(6). Accordingly, defendants' motion to dismiss Count I is denied.

### III.  Conclusion

Based on the files, records, and proceedings herein, IT IS ORDERED that:

1. Defendants' motion to dismiss Count III of the Amended Complaint is granted.

2. Plaintiffs may, not later than twenty (20) days from the date, below, amend their First Amended Complaint in accord with this Order.

3. Defendants' motion to dismiss the remaining claims in the Amended Complaint is denied.