# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1369

_____

| | | |
|---|---|---|
| Jong E. Lee; Heide Sue Casavan; | * | |
| Darcie Molitor; Whitney McFarlin; | * | |
| George E. Faue; Patricia E. Faue; | * | |
| Janice McQuiston; Randolph G. | * | |
| Sunder; Phillip Thomas; Linda Grady; | * | |
| Mathias Faue; Desiree Swan; Ranjit C. | * | |
| Desai; Priyam R. Desai; Herbert A. | * | |
| Beron; Gordon E. Bennett; C. William | * | |
| Brown, Dr., Trustee on behalf of | * | |
| C. William Brown, M.D.P/S Trust, | * | |
| dtd 4/1/85; Charles Fisher; Judith | * | |
| Anne Jacobson; Ann M. Ritz; | * | |
| Joseph Cooper, | * | |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Ernst & Young, LLP, | * | |
| | * | |
| Defendant-Appellee. | * | |
| | * | |
| Summit Medical Systems, Inc., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| -------------------------------------- | * | |
| | * | |
| Securities and Exchange Commission, | * | |
| | * | |
| Amicus on Behalf of Appellant. | * | |

_____

Submitted: October 17, 2001

Filed: June 18, 2002
_____

Before McMILLIAN, FAGG and BEAM, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

This appeal arises from consolidated securities fraud lawsuits filed against Summit Medical Systems, Inc. ("Summit"), Summit's officers and directors, and Summit's public accountant-independent auditor, Ernst & Young ("E&Y") (collectively "defendants") by Summit shareholders ("plaintiffs") in the United States District Court for the District of Minnesota. Following the entry of final judgment, plaintiffs appeal from orders of the district court resulting in the dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of their claim against E&Y for allegedly violating § 11 of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. § 77k,[1] by making materially

_____

[1]Section 11, 15 U.S.C. § 77k(a), provides the following:

In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue–

(1) every person who signed the registration statement;

(2) every person who was a director of (or person performing similar functions) or partner in the issuer at the

false and misleading statements and omissions in Summit's registration statement filed with the Securities and Exchange Commission ("SEC") in connection with Summit's initial public offering in August 1995. See Joint Appendix, Vol. I, at 65-66 (Count III of the Amended and Consolidated Class Action Complaint (hereinafter "the first amended complaint")). For reversal, plaintiffs argue that the district court (1) erred in holding as a matter of law that standing to bring the § 11 claim exists only

---

time of the filing of the part of the registration statement with respect to which his liability asserted;

(3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

(4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;

(5) every underwriter with respect to such security.

If such person acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement, then the right of recovery under this subsection shall be conditioned on proof that such person acquired the security relying upon such untrue statement in the registration statement or relying upon the registration statement and not knowing of such omission, but such reliance may be established without proof of the reading of the registration statement by such person.

for those plaintiffs who acquired their stock in the initial public offering, In re Summit Med. Sys., Inc., Sec. Litig., 10 F. Supp. 2d 1068, 1070 (D. Minn. 1998) (In re Summit), and (2) abused its discretion in denying their request to have a named plaintiff, Whitney McFarlin, appointed as a lead plaintiff after the statutory sixty-day period for requesting such appointments had expired. See Joint Appendix, Vol. II, at 554-55 (Transcript of Proceedings (Nov. 20, 1998)). For the reasons discussed below, we reverse the district court's holding on the § 11 standing issue, decline to address the lead plaintiff appointment issue, and remand the case to the district court for further proceedings consistent with this opinion.

Jurisdiction was proper in the district court based upon 28 U.S.C. § 1331. Jurisdiction is proper in this court based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

Summit is a corporation headquartered in Minneapolis, Minnesota, which provides "clinical outcomes" medical database software and related products and services. According to the first amended complaint, 2.5 million shares of Summit common stock began trading publicly on August 4, 1995, at $9.00 per share. Following the initial public offering, the Summit stock price increased even though no profit was shown by Summit. A secondary public offering was made in June 1996. At the end of 1996, the Summit stock price began to decline, and it eventually fell below the price at which the stock was initially offered to the public. On March 3, 1997, Summit publicly disclosed that it had been improperly recognizing revenues. Following an investigation, Summit announced that it planned to restate its financial results dating back to 1994. On April 4, 1997, Summit filed revised statements with the SEC showing the total revenues for the years 1994 and 1995, and the first nine months of 1996, to be $5.6 million less than originally reported, representing an 11% cumulative shortfall. See In re Summit, 10 F. Supp. 2d at 1069.

Following Summit's public disclosures, numerous lawsuits were brought against defendants, resulting in the present consolidated action. See Joint Appendix, Vol. I, at 1-8 (magistrate judge's order consolidating complaints, appointing lead plaintiffs, and approving lead counsel, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)). On August 25, 1997, the lead plaintiffs in this consolidated case filed the first amended complaint. See id. at 17-77. In their factual allegations, plaintiffs averred that Summit initially filed a draft registration statement and prospectus with the SEC on June 21, 1995, that Summit thereafter filed several amendments to its draft registration statement and prospectus, and that Summit filed its final registration statement and prospectus on August 7, 1995. See id. at 36. (Hereinafter "the registration statement" refers to the final version filed by Summit on August 7, 1995.) According to the first amended complaint, the registration statement identified E&Y as an "expert" which had audited and certified Summit's financial statements, and it set forth E&Y's opinion that Summit's consolidated financial statements "presented fairly, in all material respects, the consolidated financial position of [Summit] for the 1993 and 1994 fiscal years, and the results of [Summit's] consolidated operations and its consolidated cash flows for 1992, 1993, and 1994, 'in conformity with generally accepted accounting principles [("GAAP")].'" Id. at 36-37.[2] In Count III of the first amended complaint, plaintiffs asserted that, because of Summit's premature recognition of revenue in violation of GAAP and Summit's own publicly-stated revenue recognition policies, the registration statement contained materially false and misleading statements and omissions regarding Summit's actual financial status and accounting practices from as early as 1994. See id. at 65. In their prayer for relief, plaintiffs sought, among other things, monetary damages, attorneys' fees, and their costs of litigation. Whitney

---

[2]Because we are reviewing a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), we assume to be true the relevant factual allegations contained in the complaint. See Abels v. Farmers Commodities Corp., 259 F.3d 910, 916 (8th Cir. 2001) ("We assume, as we must in reviewing a dismissal for failure to state a claim, that all factual allegations in the complaint are true.").

McFarlin, though not a lead plaintiff, was identified in the first amended complaint as a named plaintiff.  See id. at 20.

Defendants, including E&Y, moved to dismiss the first amended complaint on several grounds.  The district court granted in part and denied in part defendants' motion to dismiss.  In re Summit, 10 F. Supp. 2d at 1071.  As to the § 11claim against E&Y, the district court held, as a matter of law, that only those plaintiffs who purchased their stock in the Summit initial public offering had standing to sue.  See id. at 1070.  In support of this holding, the district court relied upon Gustafson v. Alloyd Co., 513 U.S. 561 (1995) (Gustafson) (holding that aftermarket purchasers of securities did not have a claim under § 12(2) of the 1933 Act[3]).  The district court explained that the 1933 Act must be read as a whole and that, based upon the shared legislative history and legislative intent behind § 11 and § 12(2) of the 1933 Act, "the standing principles announced in Gustafson apply equally to Section 11 and 12 claims."  In re Summit, 10 F. Supp. 2d at 1071 (citing In re WRT Energy Sec. Litig., No. 96-CIV 3611, 1997 WL 576023, at *5 (S.D.N.Y. Sept. 15, 1997) (dismissing, for lack of standing, a § 11 claim brought by aftermarket purchasers of securities, based upon interpretation and application of Gustafson)).  The district court dismissed the § 11 claim of all the named plaintiffs except for two (one of whom was McFarlin) who appeared to have acquired their stock in Summit's August 1995 initial public offering.  Id.  As to the other plaintiffs, the district court  dismissed their § 11 claim without prejudice and with leave to replead the § 11 claim to establish standing consistent with the district court's interpretation of the statute.  Id.[4]

_____

[3]Section 12(2) of the 1933 Act is codified at 15 U.S.C. § 77l(a)(2).

[4]The district court explained:

Because plaintiffs do not complain that they purchased their Summit shares in the IPO, their Section 11 claim is dismissed for lack of standing, and because the only claim against E&Y is premised on Section 11, E&Y's motion to dismiss is granted in its entirety. . . . None

Plaintiffs subsequently filed a Second Amended and Consolidated Class Action Complaint ("the second amended complaint"), see Joint Appendix, Vol. II, at 352-403, which again included under Count III a § 11 claim against E&Y and others. This time, however, it was brought by the two plaintiffs who appeared to have purchased their Summit shares in the August 1995 initial public offering, on behalf of the members of the class who had purchased their Summit shares in the initial public offering. See id. at 399-400. E&Y moved to dismiss the § 11 claim in the second amended complaint, and the district court scheduled a hearing. At the hearing, held on November 20, 1998, plaintiffs acknowledged that McFarlin was the only named plaintiff who had purchased stock in Summit's August 1995 initial public offering, and they asked to have McFarlin appointed a lead plaintiff. The district court orally denied plaintiffs' request on the ground that it would be inconsistent with the PSLRA to appoint McFarlin as a lead plaintiff at that point in the litigation. See Joint Appendix, Vol. II, at 554-55 (Transcript of Proceedings) ("That, in my view, both contravenes the words of the 60-day designation, and in fact contravenes the strongly expressed spirit of Congress inherent in the passage of the [PSLRA]."). Thereafter, pursuant to Fed. R. Civ. P. 12(b)(6), the district court dismissed plaintiffs' § 11 claim against E&Y as set forth in the second amended complaint. In re Summit, No. 97-CV-558 (D. Minn. Nov. 24, 1998) (order).

Following an agreement by the parties to settle the remaining claims against Summit and its officers and directors, the district court entered an order approving the

---

of the putative class plaintiffs allege a purchase in the IPO, and it is clear from the list of purchasers contained in the Complaint that only two plaintiffs, Casvan and McFarlin, could have purchased Summit stock in the IPO. Thus, the Section 11 claims for the remaining plaintiffs are dismissed without prejudice, and with leave to replead, should they have standing in accord with this opinion.

In re Summit Med. Sys., Inc., Sec. Litig., 10 F. Supp. 2d 1068, 1070-71 (D. Minn. 1998).

terms of the settlement and entering final judgment.  Id. (Jan. 17, 2001) (judgment).
This appeal followed.

**Discussion**

Standing under § 11 of the 1933 Securities Act

We review the district court's interpretation of a federal statute *de novo*.  See Hamilton v. Schriro, 74 F.3d 1545, 1551 (8th Cir.), cert. denied, 519 U.S. 874 (1996). Plaintiffs, with the support of the SEC as an amicus curiae, argue that the district court erroneously interpreted § 11 of the 1933 Act when it held that only those plaintiffs who acquired stock in the Summit August 1995 initial public offering have standing to sue under § 11.  Plaintiffs argue that aftermarket purchasers may bring a claim under § 11 so long as they can "trace" their securities to the public offering under the registration statement alleged to be false and misleading.  See, e.g., Kirkwood v. Taylor, 590 F. Supp. 1375 (D. Minn. 1984) (allowing an aftermarket purchaser to establish standing by "direct tracing" – that is, by showing that the security was issued under the registration statement alleged to be defective, and not under a different registration statement), aff'd, 760 F.2d 272 (8th Cir. 1985) (unpublished table decision).  Plaintiffs maintain that the district court erroneously relied on the Supreme Court's decision in Gustafson in rendering its decision. Plaintiffs contend that, because Gustafson involved § 12(2) of the 1933 Act, not § 11, its holding is limited to the question of what constitutes a "prospectus" under § 12. Plaintiffs note that the majority of federal courts that have addressed this issue, including the only two circuit courts of appeals to have ruled on it since Gustafson was decided, have concluded that the Gustafson holding does not extend to § 11 claims.  See Brief for Appellants at 14-16 (citing, e.g., Joseph v. Wiles, 223 F.3d 1155, 1159-61 (10th Cir. 2000) (Joseph); Hertzberg v. Dignity Partners, Inc., 191 F.3d 1076, 1080-82 (9th Cir. 1999) (Hertzberg)).  In support of this view, plaintiffs highlight differences between § 11 and § 12.  For example, the language of § 12

refers to "the person purchasing such security from him," where "him" is the seller of securities by prospectus. In comparison, § 11 refers more broadly to "any person acquiring such security." Plaintiffs argue that allowing § 11 standing for aftermarket purchasers is consistent not only with the Supreme Court's reasoning and disposition in Gustafson, but also with the language of the statute, the legislative history of the 1933 Act, and a large body of case law that has traditionally permitted tracing under § 11.

E&Y argues that the district court has correctly and appropriately applied Gustafson to the present case. E&Y explains: "Gustafson was animated, not by anything unique to Section 12(2), but by the structure of the entire 1933 Act and the relationship of the 1933 Act to the 1934 Act and the overall statutory scheme." Brief for Appellee at 24. E&Y further argues that the reference to "such security" in § 11 can only mean a security being offered in a public offering pursuant to the registration statement at issue. E&Y also contends that plaintiffs have mischaracterized the difference between § 11 and § 12 of the 1933 Act. According to E&Y, the real distinction between § 11 and § 12 is not who may sue but, rather, who may be sued. See id. at 27. E&Y maintains that § 12 only allows sellers of securities to be potential defendants, while § 11 contains a much broader list of potential defendants. Nevertheless, under both § 11 and § 12, E&Y argues, a purchaser must have obtained his or her security in a public offering, pursuant to the registration statement at issue, in order to have standing to sue. E&Y also argues that allowing aftermarket purchasers to establish standing through tracing will produce anomalous results. For example, under the tracing theory, two investors in the secondary market who purchase the exact same stock, at the exact same time, for the exact same price, can have completely different remedies under § 11 depending on the origin of the shares they purchased. E&Y contends it could not have been the intent of Congress to allow this and other seemingly arbitrary remedial disparities under § 11.

This court has yet to rule upon the § 11 standing issue in a published opinion. By affirming the district court's pre-<u>Gustafson</u> decision in <u>Kirkwood v. Taylor</u>, we have, however, upheld an interpretation of § 11 which allows aftermarket stock purchasers to establish standing by tracing their securities to the registration statement alleged to be defective.

The Supreme Court's 1995 <u>Gustafson</u> decision has added a new dimension to the debate, and the result among the federal district courts has been a divergence of views concerning the continued viability of the tracing doctrine. <u>Compare, e.g.</u>, <u>In re Twinlab Corp. Sec. Litig.</u>, 103 F. Supp. 2d 193, 202 (E.D.N.Y. 2000) ("Standing under Section 11 is not limited to purchasers who directly participated in the public offering covered by the allegedly misleading registration statement and prospectus."), <u>with</u> <u>Gannon v. Continental Ins. Co.</u>, 920 F. Supp. 566, 575 (D.N.J. 1996) ("There is no allegation that any of these acquisitions were pursuant to an initial public offering and plaintiff alleges, in his complaint that he purchased [the stock] 'on the open market.' Such a purchase is by definition not pursuant to an initial public offering and as such he has no cause of action under [§ 11]."). Both of the two federal courts of appeals that have considered this standing issue since <u>Gustafson</u> – the Ninth and Tenth Circuits – have, as noted above, held that § 11 claims can be brought by aftermarket purchasers who are able to trace their securities to the registration statement alleged to be defective. <u>See</u> <u>Joseph</u>, 223 F.3d at 1159-61; <u>Hertzberg</u>, 191 F.3d at 1080-82. Prior to <u>Gustafson</u>, the First and Second Circuits had indicated a similar view. <u>See</u> <u>Versyss Inc. v. Coopers & Lybrand</u>, 982 F.2d 653, 657-58 (1st Cir. 1992) (holding that, by operation of merger law, securities of acquired company ceased to exist upon their relinquishment to the acquiring company and therefore no § 11 claim could be asserted by the acquiring company against the accountant for the acquired company even though, ordinarily, "under section 11, accountants are held to demanding standards when they certify registration statements and *are liable to remote purchasers* well beyond more predictable common law limits") (emphasis added), <u>cert. denied</u>, 508 U.S. 974 (1993); <u>Barnes v. Osofsky</u>, 373 F.2d 269, 271-72

(2d Cir. 1967) (assuming that § 11 allows claims based upon tracing to the registration statement in question, but rejecting the even broader interpretation urged by the appellant, which would provide a cause of action for purchasers of securities "of the same nature" as those issued pursuant to the registration statement in question).

We begin our present analysis with the language of the statute itself. As we have previously explained:

> If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end. If, on the other hand, the language of a statute is ambiguous, we should consider "the purpose, the subject matter and the condition of affairs which led to its enactment." When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law.

Dowd v. United Steelworkers, 253 F.3d 1093, 1099 (8th Cir. 2001) (Dowd) (quoting United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000)).

Section 11(a) provides in relevant part:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make statements therein not misleading, *any person acquiring such security* (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue . . . .

-11-

15 U.S.C. § 77k(a) (emphasis added). The phrase "any person acquiring such security" is not only broad on its face but, more importantly, is broad when compared to the language of § 12(2), the provision at issue in the Gustafson decision. Section 12(2) provides that any person who "offers or sells a security" by means of a "prospectus or oral communication" containing a materially false or misleading statement or omission shall be liable "to the person purchasing such security from him" (subject to exceptions not pertinent herein). 15 U.S.C. § 77*l*(a)(2). Section 12(2), therefore, expressly requires privity between the issuer and the purchaser of the security at issue. Section 11, by contrast, has no comparable language – it simply refers to "any person acquiring such security," with "such security" referring to a security registered under the registration statement alleged to be defective. We perceive the absence in § 11 of limiting language similar to that found in § 12(2) to indicate Congress's intent to convey a relatively broader meaning. See Gustafson, 513 U.S. at 577 (comparing language in § 12(2) to § 17(a) of the 1933 Act, and explaining that the presence of limiting language in § 12(2) requires a narrow construction, just as the absence of such limiting language in § 17(a) results in a broader construction). In other words, we read § 11's plain language to state unambiguously that a cause of action exists for any person who purchased a security that was originally registered under the allegedly defective registration statement – so long as the security was indeed issued under *that* registration statement and not another. Therefore, even in light of Gustafson, § 11 is broad enough to encompass some aftermarket purchasers, subject, of course, to the long-recognized requirement that the plaintiff must directly trace his or her security to the allegedly defective registration statement at issue in the case, as was required in Kirkwood v. Taylor. Accord Joseph, 223 F.3d at 1159; Hertzberg, 191 F.3d at 1080. In addition, we note that, under § 11(e), damages are generally calculated as the difference between the amount paid for the security, *not exceeding the price at which the security was offered to the public*, and the price of the security at the time the lawsuit was filed or the security was disposed of in the market. See 15 U.S.C. § 77k(e). It would be unnecessary to limit the price to no more than the price offered to the public if the

cause of action were limited to participants in the initial public offering. Similarly, § 11(g) – which expressly caps the maximum amount recoverable to the price offered to the public – would likewise be superfluous if only those who participated in the initial public stock offering could bring a § 11 claim. See id. § 77k(g).

We next consider whether there is clear legislative intent contrary to our interpretation of § 11. See Dowd ("If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary."). The purpose and scope of the 1933 Act was to regulate the initial distribution of securities. See Gustafson, 513 U.S. at 571. Central to the regulatory scheme was the requirement that publicly-offered securities be registered with the SEC. The importance of the registration statement to Congress's regulatory and enforcement framework is indicated by the standard imposing liability for materially false and misleading misstatements or omissions, without a scienter requirement.[5] By making the cause of action available to anyone who purchased stock that was originally issued under the registration statement in question, not just those who actually participated in the initial public offering, Congress enhanced the incentive for compliance and bolstered the mechanism for enforcing § 11. Our interpretation of § 11 is also consistent with the recognition that a material misstatement or omission in connection with an initial public offering can adversely affect aftermarket purchasers. Accord Joseph, 223 F.3d at 1160. However, to protect issuers of publicly-traded securities against abuses of the process, Congress additionally incorporated a requirement for certain aftermarket purchasers to prove that they *relied* on the registration statement in question. See 15 U.S.C. § 77k(a) ("If such person acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning

_____

[5]The plaintiff need only show that the registration statement, upon becoming effective, contained an untrue statement of a material fact or omitted to state a material fact that either was required or was necessary to render the statement not misleading. See 15 U.S.C. § 77k(a).

after the effective date of the registration statement, then the right of recovery under this subsection shall be conditioned on proof that such person acquired the security relying upon the such untrue statement in the registration statement or relying upon such registration statement and not knowing of such omission, but such reliance may be established without proof of the reading of the registration statement by such person."). Finally, requiring aftermarket purchasers to show that their securities can be traced to the allegedly defective registration statement further ensures fidelity to the statutory purpose, and we again emphasize that tracing is a requirement of aftermarket purchaser standing under § 11 in this circuit. See, e.g., Kirkwood v. Taylor, 590 F. Supp. at 1378-79.

**Conclusion**

We hold in the present case that standing to pursue a claim against E&Y pursuant to § 11 of the 1933 Act exists for aftermarket purchasers of Summit stock who can make a prima facie showing that the Summit shares they purchased can be traced to the registration statement alleged to be false and misleading. Accordingly, we reverse the district court's holding to the contrary. In light of our holding on the § 11 standing issue, we reverse the dismissal of plaintiffs' § 11 claim and decline to reach the issue of whether the district court abused its discretion in denying plaintiffs' request for the appointment of Whitney McFarlin as a lead plaintiff. The case is remanded to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.